**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Timothy R. STEAD, Defendant–Appellant.**

No. 00CA2212.

Colorado Court of Appeals, Div. III.

Aug. 15, 2002.

Certiorari Denied March 24, 2003. *

* Justice RICE does not participate.

Ken Salazar, Attorney General, Matthew S. Holman, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

David S. Kaplan, Colorado State Public Defender, Danielle Moore, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge STERNBERG.**

Defendant, Timothy R. Stead, appeals from the trial court's order classifying him as a sexually violent predator as defined by § 18–3–414.5, C.R.S.2001, and thus subjecting him to lifetime registration as a sex offender and other requirements of § 18–3–412.5, C.R.S.2001. We affirm.

Defendant was charged with twenty-nine criminal counts arising from a series of incidents between March 1999 and February 2000. Defendant befriended teenagers and opened his home to them. He provided them with drugs and alcohol and encouraged or engaged them in sexual activity, often photographing them. These photographs and numerous other items of pornography were recovered from defendant's apartment.

Defendant pleaded guilty to one count each of sexual exploitation of a child, contributing to the delinquency of a minor, sexual assault on a child, second degree sexual assault, and second degree sexual assault on an at-risk adult. The trial court sentenced defendant to twelve years in the Department of Corrections (DOC) for sexual exploitation of a child, six years for contributing to the delinquency of a minor, two years to life for sexual assault on a child, four years to life for second degree sexual assault on an at-risk adult, and to two years in the county jail for second degree sexual assault. The trial court ordered that the first two sentences run consecutively to one another and concurrently with the remaining three sentences.

At the sentencing hearing, a contested issue was whether defendant met the criteria of a sexually violent predator as defined by § 18–3–414.5. After hearing evidence from a probation supervisor and three sex offender evaluators, the trial court adjudicated defendant a sexually violent predator. This appeal followed.

I.

Defendant contends that the sex offender registration and internet posting requirements of § 18–3–412.5 violate his constitutional rights to due process and trial by jury. Defendant argues that his adjudication as a sexually violent predator exposes him to an enhanced penalty; thus, in his view, under *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), this determination had to be made by a jury and proved beyond a reasonable doubt. We disagree.

Colorado's sex offender registration law was amended effective July 1, 2000. Under the amended statute, any person sentenced as a sexually violent predator has a lifetime duty to register with local law enforcement agencies in the jurisdiction in which he or she resides. Section 18–3–412.5(3.5)(a), C.R.S.2001. Prior to this amendment, the registration statute permitted an offender, after a certain number of years, to petition the district court to discontinue the registration requirement. Colo. Sess. Laws 1994, ch. 290, § 18–3–412.5(7) at 1738.

In addition, on May 23, 2000, the General Assembly enacted legislation requiring the Colorado Bureau of Investigation to post a link on the State of Colorado Internet home page to a list containing the name, address, place of employment, physical description, and digitized photograph of any person required to register as a sexually violent predator. Section 18–3–412.5(3.6)(a), C.R.S.2001. An offender must pay for the cost of the photograph and for a set of fingerprints to verify the offender's identity. Section 18–3–412.5(3)(e), C.R.S.2001.

In *Apprendi v. New Jersey, supra,* the Supreme Court determined that any fact, other than the fact of a prior conviction, that increases the maximum penalty for a crime

** Sitting by assignment of the Chief Justice under provisions of Colo. Const. art. VI, § 5(3), and

§ 24–51–1105, C.R.S.2001.

beyond the prescribed statutory maximum for that crime must be submitted to the jury and proved beyond a reasonable doubt. *See also People v. Martinez*, 32 P.3d 520 (Colo. App.2001).

Because we conclude that the registration and Internet posting provisions of § 18–3–412.5 do not constitute punishment, *Apprendi* is inapplicable.

## A. Lifetime Registration

Defendant argues that imposing on him a lifetime duty to register as a sex offender constitutes punishment. We reject the argument.

■ A division of this court has determined that the sex offender registration statute, § 18–3–412.5(1), C.R.S.2001, does not disadvantage those offenders subject to its provisions; thus, registration is not punishment subject to ex post facto analysis. *Jamison v. People*, 988 P.2d 177 (Colo.App. 1999). We adopt the same analysis here.

As noted by the division in *Jamison*, the intent of the General Assembly in enacting the sex offender registration provisions is not to inflict additional punishment, but rather to aid law enforcement officials in investigating future sex crimes and to protect the public safety. This purpose is expressly declared in the legislation:

> The general assembly ... finds that the public must have limited access to information concerning persons convicted of offenses involving unlawful sexual behavior that is collected pursuant to this section to allow them to adequately protect themselves and their children from these persons. The general assembly declares, however, that, in making this information available on a limited basis to the public, it is not the general assembly's intent that the information be used to inflict retribution or additional punishment on any person convicted of an offense involving unlawful sexual behavior.

Section 18–3–412.5(6.5)(a), C.R.S.2001.

Moreover, requiring a person to register as a sex offender does not increase the time that person spends in custody. *Jamison v.*

*People, supra; see also People v. Montaine,* 7 P.3d 1065 (Colo.App.1999).

Our analysis does not change even though persons categorized as sexually violent predators are no longer eligible, under the July 2000 amendment, to petition to be released from the registration requirements. Before this amendment, it was within the discretion of the trial court to release an offender from the duty to register. That the duty to register now lasts for life, as opposed to lasting indefinitely, does not transform it into a punishment.

## B. Internet Posting

Defendant also argues that posting personal information about him on the internet, including his name, address, place of employment, physical description, and photograph, is a criminal penalty. We disagree.

Section 18–3–412.5(3.6)(a) provides that a link to a list of the personal information of certain sex offenders, including persons classified as sexually violent predators, reoffenders, and persons failing to register, will be posted on the state home page.

The trial court determines whether an offender is a sexually violent predator. Section 18–3–414.5(2), C.R.S.2001. A sexually violent predator is an offender: (1) who is eighteen years of age or older as of the date of the offense; (2) who has been convicted on or after July 1, 1999 of one of several enumerated offenses, including second degree sexual assault and sexual assault on a child; (3) whose victim was a stranger to the offender or a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and(4) who, based on the results of a risk assessment screening instrument, is likely subsequently to commit another of the listed offenses. Section 18–3–414.5(1), C.R.S. 2001.

■ As discussed, the intent of the General Assembly in enacting this provision was to serve public safety needs and to aid law enforcement. Although a legislature's descriptive label on a statute is not always dispositive, a reviewing court should reject that label only where a party challenging the

statute provides "the clearest proof" that the statutory scheme is so punitive either in purpose or effect as to negate the stated civil intention. *Kansas v. Hendricks*, 521 U.S. 346, 361, 117 S.Ct. 2072, 2082, 138 L.Ed.2d 501, 515 (1997).

Whether placement on the internet sex offender list constitutes punishment is an issue of first impression in Colorado. We find the analyses in *Femedeer v. Haun*, 227 F.3d 1244 (10th Cir.2000), and *People v. Stead*, 845 P.2d 1156 (Colo.1993), to be instructive.

*Femedeer* examined a Utah statute, Utah Code Ann. § 77–27–21.5(10) (1998), that created a sex offender internet notification scheme substantially the same as Colorado's program. The court applied the factors outlined in *Kennedy v. Mendoza–Martinez*, 372 U.S. 144, 83 S.Ct. 554, 9 L.Ed.2d 644 (1963), to determine whether posting personal information on the Internet about convicted sex offenders constituted additional criminal punishment in violation of the Ex Post Facto Clause.

The *Mendoza–Martinez* factors include: (1) whether the sanction involves an affirmative disability or restraint; (2) whether it has historically been regarded as a punishment; (3) whether it comes into play only on a finding of scienter; (4) whether its operation will promote the traditional aims of punishment—retribution and deterrence; (5) whether the behavior to which it applies is already a crime; (6) whether an alternative purpose to which it may rationally be connected is assignable for it; and (7) whether it appears excessive in relation to the alternative purpose assigned.

The court in *Femedeer* determined that the Utah legislature intended to establish a civil remedy, not a criminal penalty. It then looked to the punitive effect of the statute under the *Mendoza–Martinez* factors and concluded that, overall, the dissemination of an offender's personal information over the internet did not serve as punishment.

In *Stead, supra,* the Colorado Supreme Court examined similar factors to determine whether a $1000 drug offender surcharge, used to cover the costs of substance abuse assessment, testing, education, and treatment, constituted an additional punishment. The court started its analysis with the definition of "punishment" as "any fine, penalty, or confinement inflicted upon a person by the authority of the law." *People v. Stead, supra,* 845 P.2d at 1160 (quoting *Black's Law Dictionary* 1234 (6th ed.1990)). The court noted that the surcharge was part of the Colorado criminal code, that it was available as a sanction after a person had been convicted of a drug-related offense, and that the amount of the fine corresponded to the degree of felony committed. In addition, because the money collected was used primarily to fund education and treatment programs for substance abusers, the surcharge directly served the purposes of prevention and rehabilitation.

We now examine the Colorado sex offender Internet notification scheme under the factors articulated in *Mendoza–Martinez* and *Stead.*

#### 1. Affirmative Disability or Restraint

Here, as with the Utah statute, the Internet notification program does not impose a disability or restraint. It does not by itself restrict where sex offenders may live and work. Further, it does not affect the length of a defendant's incarceration or parole eligibility. *See Gasper v. Gunter,* 851 P.2d 912 (Colo.1993).

#### 2. Traditional Punishment

We agree with the *Femedeer* court that public dissemination of information about criminal history is not traditionally considered a punishment, despite the potential negative consequences for a defendant. Much of the information on the Internet was previously available to the public, albeit on a more limited basis, through the sex offender registry, as well as through public criminal records. We do not consider this factor to weigh heavily towards finding that the internet notification scheme is a punishment.

#### 3. Finding of Scienter

The statute may meet the third element of the *Mendoza–Martinez* test in that it does, in

some cases, require an additional finding of scienter.

We look only to the face of the statute, not to the offenses underlying an individual's classification as a sexually violent predator. *See Femedeer v. Haun, supra* (citing *Hudson v. United States*, 522 U.S. 93, 118 S.Ct. 488, 139 L.Ed.2d 450 (1997)).

To classify an offender as a sexually violent predator, the trial court must find, among other things, that the victim was a stranger or "a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization." Section 18–3–414.5(1)(a)(III), C.R.S. 2001. Thus, where the victim is not a stranger, the court must be satisfied that the offender had a specific intent in forming the relationship.

We note, however, that this finding applies only to persons categorized as sexually violent predators, not to others subject to the Internet notification provisions of the statute.

#### 4. Traditional Aims of Punishment

The fourth *Mendoza–Martinez* factor is whether the statute promotes the traditional aims of punishment, such as deterrence or retribution. We agree with the *Femedeer* court that while the internet posting might indirectly have a deterrent effect, this factor is inconclusive.

Further, while an offender subject to this statute must pay for the cost of a photograph and fingerprints, this expense is distinguishable from the drug offender surcharge in *People v. Stead, supra*, which the supreme court concluded was a punishment. Unlike that surcharge, the amount collected here has no correlation to the degree of felony committed, and it covers the administrative costs of a program intended primarily to provide information to law enforcement and the public, not to rehabilitate convicted offenders. *See Wood v. Beatrice Foods Co.*, 813 P.2d 821 (Colo.App.1991)(law will withstand an ex post facto challenge if the legislative intent is not to impose further punishment for past crimes, but instead is to regulate a present situation).

#### 5. Behavior Already a Crime

Unquestionably, the behavior triggering the sanction is itself a crime. The Internet posting requirements for sexually violent predators are part of the criminal code and are triggered upon conviction of specified sexual offenses. *See* § 18–3–414.5(1)(a)(II), C.R.S.2001.

This factor is met even though a separate proceeding is held to determine whether an offender is a sexually violent predator. An offender does not come within the ambit of § 18–3–412.5(3.6)(a) unless that person has been convicted of a crime involving unlawful sexual behavior.

#### 6. Rational Connection to a "Good Purpose"

As discussed, the purpose of the registry is to aid in the prevention and investigation of future sex crimes. Posting information about specific sex offenders on the Internet is rationally connected to this purpose.

Further, we note that the statute here is more narrowly drawn than the Utah statute examined in *Femedeer*. The Utah notification scheme included all offenders who had been convicted of particular crimes. Section 18–3–412.5(3.6), C.R.S.2001, by contrast, essentially applies only to sex offenders who are evaluated to be at a high risk of reoffending, those who have reoffended, or those who have failed to register. By limiting the Internet list to those subcategories of offenders, the General Assembly has attempted to tailor the purpose of the list to its actual effect.

#### 7. Excessive Costs

Finally, we conclude that the Internet notification scheme does not impose excessive costs in relation to the public safety purpose for which it is intended.

As noted by the court in *Femedeer*, although the personal information about these offenders will be widely available, persons seeking this information still have to act affirmatively to obtain it. In addition, "the farther removed one is from a sex offender's community . . ., the less likely one will be to have an interest in accessing this particular

registry." *Femedeer v. Haun, supra,* 227 F.3d at 1253. Given the great harms inflicted by sex offenders, the dangers presented by the dissemination of this information are not excessive.

In sum, we find that the internet notification scheme may have the purpose or effect of a punishment in that it is triggered by a criminal offense, and it may require an additional finding of scienter. However, the scheme is not punitive in that it imposes no fine, confinement, or restraint; it has an expressly nonpunitive intent and purpose; it is not traditionally considered a type of punishment; and it is not excessive in relation to the public safety purposes it serves.

We conclude that, taken as a whole, the Internet posting provision of the sex offender statute does not constitute additional punishment. Thus, the trial court's adjudication of defendant as a sexually violent predator did not violate his constitutional rights under *Apprendi* to trial by jury and due process.

## II.

Defendant's next contention is that the trial court abused its discretion by adopting in its findings the evidence of an uncertified sex offender evaluator and her supervisor. We disagree.

The trial court made detailed findings and determined that defendant met the four statutory criteria of a sexually violent predator under § 18–3–414.5. Defendant contests only the last criterion: whether the risk assessment screening instrument showed that he was likely to reoffend.

■ Two sex offender evaluators administered the risk assessment screening instrument on defendant; one was not certified and thus her work was supervised by another evaluator. According to the risk assessment instrument, an offender is considered likely to reoffend if he or she meets four of ten risk scale descriptors. The two evaluators here agreed that defendant met three of the descriptors.

■ The trial court agreed with the evaluators and found, further, that defendant met two additional descriptors: defendant was employed less than full time at the time of arrest and he scored high on a denial scale. Although the evaluators disagreed with each other as to whether defendant met the last two descriptors, we give deference to the trial court's findings of fact and will not overturn them if they are supported by competent evidence. *See People v. Owens,* 969 P.2d 704 (Colo.1999).

There was evidence that defendant had not worked thirty-five or more hours per week for one year at the time of his arrest, the definition of "full-time" employment in the risk assessment instrument. The trial court properly used this definition in its findings.

Further, there was evidence that defendant continued to exhibit a high level of denial. According to the testimony of one evaluator, defendant maintained that his victims "enjoyed it," that they had initiated the sexual contact, and that he did not view himself as a sex offender.

This evidence supports the trial court's findings that defendant met the criteria of a sexually violent predator. Therefore, we perceive no abuse of discretion.

## III.

Defendant also contends that the trial court's determination that he is a sexually violent predator subjects him to ex post facto punishment in violation of the United States and Colorado Constitutions. Because defendant did not raise this contention at any time in the trial court, it arguably is not properly before us, but, in any event, the issue is resolved adversely to defendant by *Jamison v. People, supra.*

Order affirmed.

Judge JONES and Judge DAVIDSON concur.