The PEOPLE of the State of Colorado,
Plaintiff–Appellee,

v.

Brandon David ALLEN, Defendant–
Appellant.

No. 08CA2098.

Colorado Court of Appeals,
Div. II.

Nov. 24, 2010.

John W. Suthers, Attorney General, Christopher Y. Bosch, Assistant Attorney General, Denver, Colorado, for Plaintiff–Appellee.

Douglas K. Wilson, Colorado State Public Defender, Karen Mahlman Gerash, Deputy State Public Defender, Denver, Colorado, for Defendant–Appellant.

Opinion by Judge HAWTHORNE.

Defendant, Brandon David Allen, appeals the district court's orders denying his motions to withdraw his guilty plea and continue his sentencing. He also appeals the court's sentencing order finding him to be a sexually violent predator (SVP). We affirm.

## I.  Factual Background

According to the arrest warrant affidavit and defendant's presentence investigation report, the victim was awakened by a man wearing a mask and gloves standing next to her bed. He pulled the sheet off of her and removed her underwear. He moved her to the bed's edge, placed a pillow over her face, squeezed her neck, slapped her, and said, "You're not going to tell are you? If you do, I will come and kill you!" Defendant sexually assaulted the victim for several hours. When she asked why he picked her house, defendant responded that he liked to break into houses "because of the rush." He told her that this was his "first time for a sexual assault" and repeatedly said, "I'm sorry." The victim reported that defendant, her neighbor, fit the intruder's description. Testing revealed that sperm cells recovered from the victim matched defendant's DNA profile.

Defendant was charged with two counts of sexual assault, one count of second degree burglary, second degree assault, menacing, and crime of violence.

Defendant pled guilty to first degree sexual assault—crime of violence, second degree burglary, and second degree assault. The plea agreement included a stipulated Department of Corrections (DOC) sentence with a minimum range of fifteen to twenty-five years and a maximum term of imprisonment for the rest of his natural life, plus mandatory parole.

Prior to sentencing, defendant filed a pro se motion to withdraw his guilty plea, alleging that plea counsel had lied to him about the sentence he would receive. Plea counsel subsequently withdrew, citing irreconcilable differences. New counsel filed a Crim. P. 32(d) motion to withdraw defendant's guilty plea, alleging that he was not advised of the plea's consequences. Following a hearing, the court denied the motion. The court also denied defendant's subsequent motion requesting his sentencing be continued and a competency evaluation be conducted to investigate whether Lariam, a malaria drug he took while serving in the army, affected his mental state.

The court sentenced defendant to twenty years to life for first degree sexual assault to run consecutively to two concurrent five-year terms for second degree burglary and second degree assault. Contrary to the sexual assault risk assessment screening instrument

(RASI) and the evaluator's recommendation, the court found defendant to be an SVP. The court subsequently made further factual findings supporting its SVP determination.

In this appeal, defendant contends that the court erred in (1) denying his motion to withdraw his plea; (2) denying his motion to investigate a possible defense; and (3) finding him to be an SVP. We reject each of these arguments in turn and conclude as a matter of first impression that a district court may, with record support, find a defendant to be an SVP where the RASI and evaluator make a contrary recommendation.

## II. Plea Withdrawal

■ Defendant contends the district court abused its discretion in denying his motion to withdraw his guilty plea. We are not persuaded.

■ A defendant bears the burden of establishing a fair and just reason for withdrawing his or her guilty plea before sentencing. *People v. Chippewa*, 751 P.2d 607, 609 (Colo.1988). We review a trial court's denial of a Rule 32(d) motion to withdraw a guilty plea for abuse of discretion. *Id.* To show an abuse of discretion, a defendant must establish that the court's decision was manifestly arbitrary, unreasonable, or unfair. *People v. Finley*, 141 P.3d 911, 913 (Colo. App.2006).

### A. Sentence Misapprehension

Defendant argues that his alleged sentence misapprehension constituted a fair and just reason for withdrawing his guilty plea. We disagree.

The sentencing agreement provided, "The Defendant agrees that the Court will sentence him to a stipulated term of imprisonment with a minimum range between 15 years and 25 years to be served at the Department of Corrections, and a maximum term of imprisonment of up to the rest of his natural life, plus a period of mandatory parole." It further stated that defendant agreed to be sentenced to a range of ten to twenty-five years on the sexual assault charge, up to the rest of defendant's natural life, plus a mandatory parole period.

As relevant here, the plea agreement further provided:

I understand the judge will not be bound by any promises or representations made to me concerning penalties to be imposed or the granting or denial of probation, no matter who made them, unless written down as part of this agreement. The Defendant, Defense Counsel, and the District Attorney all agree that there are no representations which have been made to induce the Defendant to plead guilty other than what is actually stated in this agreement.

Additionally, during the plea hearing, the court stated, "As to the sexual assault, it would be a range of ten years to 25 years to life; is that correct?" Plea counsel agreed, and defendant did not disagree. The court proceeded, "Mr. Allen, is that your understanding of what is happening here today?" He replied, "Yes, sir." Defendant also responded affirmatively to the court's questions about whether he had had sufficient time to discuss the agreement with his attorney and review the paperwork and had had all of his questions answered. Defendant further indicated that he did not have any questions about the possible sentence. The court addressed the agreement's stipulated sentence:

THE COURT: We recognize that in this agreement, it is a range of ten years to 25 years, up to the rest of your natural life, plus the mandatory period of parole. Do you understand that, sir?

DEFENDANT: Yes, sir.

The court conducted a two-day hearing concerning defendant's alleged sentence misapprehension. Defendant testified that defense counsel told him that he had negotiated a plea of six to eight years and that his sentence "wasn't like anything to life" because he figured counsel had "the indeterminate taken care of." He further asserted that he did not read the plea agreement before signing it.

Plea counsel testified that he traveled to the jail before the plea hearing to explain the agreement's terms to defendant. He stated that he spoke with defendant at length about what it meant to be sentenced to fifteen to twenty-five years to life and that defendant

repeatedly said that he thought he would probably serve twenty years. Plea counsel maintained that he never told defendant that he would receive only six to eight years or that he would serve a determinate sentence.

In denying defendant's motion to withdraw his guilty plea, the district court found that:

· Defendant was competent to proceed with the plea agreement;

· Plea counsel's testimony was credible, and he did not make any sentencing-related promises to defendant;

· The transcript did not reference determinate sentencing;

· Defendant repeatedly indicated that he understood the plea agreement and the advisements; and

· The agreement's terms were put on the record in defendant's and plea counsel's presence.

Because the record supports these findings, we conclude the court did not abuse its discretion in denying defendant's request to withdraw his guilty plea. *See People v. Lopez,* 12 P.3d 869, 871 (Colo.App.2000) (a defendant is not entitled to withdraw a guilty plea if his or her allegations contradict the record or are inherently incredible).

### B.  Possible Defense

■ We also reject defendant's argument that the court erred in denying his motion for a sentencing continuance and a competency evaluation because he believed he might be suffering from Lariam toxicity. Defendant's motion alleged that Lariam, a drug he took while serving in the army, had caused him gastrointestinal symptoms, dizziness, impaired reaction time, confusion, and psychosis, and that his alcohol use while taking the drug may have exacerbated these side effects. Although defendant characterized these symptoms as "new evidence," his motion stated that he "has suffered from most of [the Lariam] side effects and still suffers from many of these side effects to this day." The court found that defendant's alleged defense did not constitute a fair and just reason to withdraw his guilty plea and denied defendant's motion, stating, "I've already gone through a hearing to withdraw the plea and

declined that. And this is, as I'm seeing it, tantamount to an attempt to raise another defense that was also specifically waived at the time of the plea."

As the court noted, defendant's signed plea agreement indicated that he forfeited the right to raise defenses by pleading guilty. *See Patton v. People,* 35 P.3d 124, 128 (Colo. 2001) (by pleading guilty, a defendant waives a number of important constitutional rights, including the right to a jury trial). Moreover, due process does not require that an accused be informed of the charges' possible defenses before pleading guilty. *People v. Moore,* 841 P.2d 320, 324 (Colo.App.1992). Because the record indicates that defendant was advised of the guilty plea's consequences, we conclude that he entered his plea knowingly and voluntarily. *See People v. Hodge,* 205 P.3d 481, 484 (Colo.App.2008) (due process requires that the record as a whole show that the defendant entered a guilty plea knowingly and voluntarily).

Accordingly, the court did not abuse its discretion in denying defendant's motions.

### III.  SVP Designation

Defendant contends the court abused its discretion by classifying him as an SVP (1) contrary to the RASI's recommendation, and (2) without record support for its findings. We disagree.

As relevant here, a sexually violent predator is an offender (1) who is eighteen years of age or older when the offense was committed; (2) who has been convicted of sexual assault under section 18–3–402, C.R.S.2010; (3) whose victim was a stranger or someone the offender promoted a relationship with for the purpose of victimizing him or her; and (4) who, based on the RASI's results, is likely to subsequently commit another sexual offense against a stranger or a person with whom the offender promoted a relationship primarily for the purpose of sexual victimization. § 18–3–414.5(1)(a), C.R.S.2010; *People v. Loyas,* 259 P.3d 505 (Colo.App.2010). On appeal, defendant challenges only the court's finding that the fourth criterion was satisfied.

## A. RASI's Recommendation

■ We first reject the argument that a district court lacks the authority to disagree with the RASI's recommendation in determining whether defendant qualifies as an SVP.

■ We review statutory interpretation questions de novo. *Leyva v. People*, 184 P.3d 48, 50 (Colo.2008). In interpreting section 18–3–414.5(1)(a), our primary task is to effectuate the legislature's intent. *See id.* We begin with the statute's plain language, giving words and phrases their commonly accepted and understood meaning. *Askew v. Industrial Claim Appeals Office*, 927 P.2d 1333, 1337 (Colo.1996). If the statutory language is unambiguous, we need not resort to interpretive statutory construction rules because we presume that the General Assembly meant what it clearly said. *Id.* Where the statute's language is plain and clear, we must apply the statute as written. *In re 2000–2001 Dist. Grand Jury*, 97 P.3d 921, 924 (Colo.2004).

As relevant here, the fourth statutory criterion provides that an SVP is someone "[w]ho, based upon the results of a risk assessment screening instrument developed by the division of criminal justice in consultation with and approved by the sex offender management board [SOMB] ... is likely to subsequently commit" certain sexual assault crimes. § 18–3–414.5(1)(a)(IV), C.R.S.2010. Accordingly, when a defendant is convicted of certain sexual assault crimes:

> the probation department shall, in coordination with the evaluator completing the mental health sex offense specific evaluation, complete the sexually violent predator risk assessment, unless the evaluation and assessment have been completed within the six months prior to the conviction or the defendant has been previously designated a sexually violent predator. *Based on the results of the assessment, the court shall make specific findings of fact and enter an order concerning whether the defendant is a sexually violent predator.* If the defendant is found to be a sexually violent predator, the defendant shall be required to register pursuant to the provisions of section 16–22–108, C.R.S., and

shall be subject to community notification pursuant to part 9 of article 13 of title 16, C.R.S. If the department of corrections receives a mittimus that indicates that the court did not make a specific finding of fact or enter an order regarding whether the defendant is a sexually violent predator, the department shall immediately notify the court and, if necessary, return the defendant to the custody of the sheriff for delivery to the court, and *the court shall make a finding or enter an order regarding whether the defendant is a sexually violent predator;* except that this provision shall not apply if the court was not required to enter the order when imposing the original sentence in the case.

§ 18–3–414.5(2), C.R.S.2010 (emphasis added).

Thus, section 18–3–414.5 requires only that the court make findings "based upon" the RASI's results. *See Black's Law Dictionary* 192 (rev. 4th ed. 1968) ("based upon" "[m]eans an initial or starting point for calculation"). Accordingly, the statute's plain language indicates that the court is not bound by the RASI's results in determining whether a defendant qualifies as an SVP under section 18–3–414.5(1)(a)(IV). Rather, it indicates that a district court must consider the RASI's results in determining whether defendant is an SVP. *See People v. Rowland*, 207 P.3d 890, 895 (Colo.App.2009) (§ 18–3–414.5(2) does not require an evidentiary hearing on whether offender is an SVP; the statute requires court to *use* RASI results to make findings whether offender is an SVP); *cf. People v. Stead*, 66 P.3d 117, 123 (Colo. App.2002) (court did not abuse its discretion in finding that the defendant met two additional RASI factors where evaluators disagreed that defendant met last two RASI factors).

This conclusion is further supported by section 16–11.7–103, C.R.S.2010, which creates the SOMB and describes its duties. As relevant here,

> The board shall consult on, approve, and revise as necessary the risk assessment screening instrument developed by the division of criminal justice *to assist the sen-*

*tencing court* in determining the likelihood that an offender would commit one or more of the offenses specified in section 18–3–414.5(1)(a)(II), C.R.S., under the circumstances described in section 18–3–414.5(1)(a)(III), C.R.S.

§ 16–11.7–103(4)(c.5) (emphasis added).

The meaning of the phrase "to assist the sentencing court" is clear and unambiguous. It indicates that the General Assembly intended that the RASI be used to aid the court in determining whether a defendant qualifies as an SVP. *See Black's Law Dictionary* 111 (5th ed. 1979) (defining "assist" as "To help; aid; succor; lend countenance or encouragement to; participate in as an auxiliary. To contribute effort in the complete accomplishment of an ultimate purpose intended to be effected by those engaged."); *Webster's Third New International Dictionary* 132 (2002) ("assist" means "to give support or aid" or to "help"); *see also United States v. Reed*, 375 F.3d 340, 344 (5th Cir. 2004) (observing that the dictionary definition of "'assist' does not vary across broad-based English-language dictionaries" and defining "assist" as "to give support or aid . . . in some undertaking or effort" or "'to perform some service for' the object of the assistance" (quoting *Webster's Third New International Dictionary* 132 (1993))); *accord United States v. Holder*, 256 F.3d 959, 965 (10th Cir.2001) ("'[A]ssist' means 'to give support or aid'" (quoting *Webster's Ninth New Collegiate Dictionary* 408 (9th ed. 1990))).

Although we need not resort to extrinsic evidence because the statute is unambiguous, the assessment guidelines also support our interpretation. *The Colorado Standards and Guidelines for the Treatment, Evaluation, Treatment and Behavioral Monitoring of Adult Sex Offenders* 2.000 use the term "assist," bolstering our conclusion that the RASI serves to aid the court in making its SVP determination. Section 2.000 provides, "Evaluations are conducted to identify levels of risk and specific risk factors that require attention in treatment and supervision, and *to assist the court in determining the most appropriate sentence* for offenders." (Emphasis added.) In addition, the Colorado Sex Offender Management Board's RASI handbook states, "The legal determination of sexually violent predator is at the discretion of the presiding judge and/or the parole board." *Handbook: Sexually Violent Predator Assessment Screening Instrument for Felons* 6 (June 2003).

We therefore conclude that the RASI aids the court in determining whether a defendant meets section 18–3–414.5(1)(a)(IV)'s criterion, but the court is not bound by its recommendation. To hold otherwise would effectively cede the court's sentencing discretion to the evaluator and render the evaluator's determination essentially unreviewable. Without a clear and unambiguous indication that the General Assembly intended such an unusual result, we will not read in such an intent.[1]

### B. Record Support

■ Having determined that a district court may disagree with the RASI's recommendation, we address defendant's contention that the district court abused its discretion in finding him to be an SVP because its findings are not supported by the record. We perceive no abuse of discretion.

■ An SVP determination involves a mixed legal and factual question. *People v. Cook*, 197 P.3d 269, 280 (Colo.App.2008). We defer to the court's factual findings when they are supported by competent evidence, *Stead*, 66 P.3d at 123, and review de novo whether the court's factual findings are sufficient to support the SVP determination. *People v. Tixier*, 207 P.3d 844, 849 (Colo.App. 2008).

When a court makes a finding contrary to the evaluator's and the RASI's recommendations, it should state its specific reasons for doing so. *See* § 18–3–414.5(2) (requiring the court to make specific factual findings regarding whether defendant is an SVP "[b]ased on the results of the assessment"); *see also People v. Tuffo*, 209 P.3d 1226, 1231–32 (Colo.App.2009) (district court's determination that the defendant was an SVP re-

---

1. The issue of whether the legislature could divest the court of its sentencing discretion by delegating some aspect of sentencing to an unreviewable administrative determination is not before us.

versed, in part, because the court did not make specific factual findings); *Stead*, 66 P.3d at 123 (appellate courts defer to court's factual findings regarding SVP determination when findings are supported by competent evidence); *Tixier*, 207 P.3d at 849 (de novo review applies to determination of whether court's factual findings support its SVP determination).

Here, the court made detailed factual findings supporting its determination that defendant met section 18–3–414.5(1)(a)(IV)'s criterion. It conducted a hearing and questioned the evaluator extensively about the recommendation. The court disagreed with the evaluator's scoring approach in calculating defendant's level of denial, deviancy, and motivation. In making its finding, the court considered the RASI, which stated that defendant scored:

· Between the 62nd and 88th percentile of the risk category for male sex offenders on the STATIC 99, placing him in the moderate-high recidivism range;

· In the medium to high risk range in his motivation for treatment;

· In the medium to high risk range concerning his overall control and intervention because he lacked "understanding of his deviant cycle, his triggers, [and] his thinking errors and ... has few replacement behaviors";

· In the medium to high risk range on the social interest scale because he neither admitted nor denied committing the sexual assault; and

· In the medium to high risk range on the lifestyle characteristics score because he had Generalized Anxiety Disorder, Posttraumatic Stress Disorder, Depressive Personality Traits, obsessive compulsive personality features, and negativistic and passive-aggressive personality features.

According to the presentence investigation report, which the court had before it, defendant stated, "I took the plea to try and save face with her family and with mine. I realized I can't do that much time just to save face, to make people happy." During the sex offense specific evaluation, defendant stated, "I don't remember anything and I wish I could ... I feel horrible what happened to her and I feel like the scum of the earth if I done that to her but I don't remember it." Although the evaluator recommended that defendant attend and complete the DOC's sex offense treatment program, his report concluded that defendant did not qualify as an SVP. In disagreeing with the recommendation, the court noted that defendant:

· Stated he enjoyed the adrenaline rush from breaking into homes; Committed a violent and deviant crime;

· Attempted to deny the crime when initially interviewed by law enforcement;

· Claimed he did not remember assaulting the victim; and

· Repeatedly attempted to withdraw his guilty plea and delay sentencing.

Thus, the court determined that defendant did not admit culpability, exhibited poor sexual behavior control, and was not motivated to obtain treatment. According to the SOMB checklist, denial and motivation to obtain treatment are important factors in assessing the risk that a defendant will reoffend. The court therefore concluded that he was an SVP. Because the court's reasons for disagreeing with the RASI's recommendation are supported by competent evidence, we will not disturb its order on review.

The orders are affirmed.

Judge ROY and Judge GABRIEL concur.

