COLORADO COURT OF APPEALS                                    **2017COA58**

Court of Appeals No. 16CA0104
Douglas County District Court No. 14CR754
Honorable Paul A. King, Judge

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Steven Thomas Heisler,

Defendant-Appellant.

JUDGMENT AND SENTENCE AFFIRMED

Division V
Opinion by CHIEF JUDGE LOEB
Rothenberg* and Casebolt*, JJ., concur

Announced May 4, 2017

Cynthia H. Coffman, Attorney General, Erin K. Grundy, Assistant Attorney
General, Denver, Colorado, for Plaintiff-Appellee

Law Office of Daniel Kyser, L.L.C., Daniel H. Kyser, Englewood, Colorado, for
Defendant-Appellant

*Sitting by assignment of the Chief Justice under provisions of Colo. Const. art.
VI, § 5(3), and § 24-51-1105, C.R.S. 2016.

¶ 1    Defendant, Steven Thomas Heisler, appeals the judgment of conviction entered on a jury verdict finding him guilty of one count of harassment.  Heisler also appeals his sentence.  We affirm.

I.    Background and Procedural History

¶ 2    The victim and Heisler began dating in 2010 and carried on their relationship for three years.  After they broke up in 2013, they remained in touch.  In March 2014, however, the victim told Heisler that she was beginning a new relationship and no longer wished to communicate with him.

¶ 3    Heisler ignored the victim's request and sent her numerous text messages and letters, although the victim remained relatively unresponsive to these communications.  Eventually, in December 2014, Heisler traveled from Florida, where he lived, to Colorado to talk to the victim in person — uninvited and unannounced.  When the victim saw Heisler outside of her home, she called the police.  Heisler was arrested and charged with one count of felony stalking and one count of harassment.  The charging instrument alleged that both charges were acts of "domestic violence."  After a jury

1

trial, Heisler was acquitted of the stalking charge but was found guilty of harassment.

¶ 4    At Heisler's sentencing hearing, the trial court sentenced him to thirty days in county jail and three years of supervised probation, which Heisler could serve in Florida.  Pursuant to applicable statutes, the trial court also found that his conduct underlying his conviction included an act of domestic violence.  Therefore, the court ordered Heisler to complete mandatory domestic violence treatment as a condition of his probation.

¶ 5    Heisler now appeals.

## II.    Authentication of Text Messages

¶ 6    Heisler contends that the trial court erred by admitting into evidence the text messages he sent to the victim because they were not properly authenticated under CRE 901(a).  We disagree.

### A.    Applicable Law and Standard of Review

¶ 7    Before evidence may be admitted, CRE 901(a) requires that the evidence be sufficiently authenticated by the proponent. Authentication "is satisfied by evidence sufficient to support a finding that the [evidence] in question is what its proponent claims [it to be]."  CRE 901(a); *see also People v. Glover*, 2015 COA 16,

¶ 12. "The burden to authenticate 'is not high — only a prima facie showing is required . . . .'" *Glover*, ¶ 13 (quoting *United States v. Hassan*, 742 F.3d 104, 133 (4th Cir. 2014)).

¶ 8    The showing required to authenticate text messages under CRE 901(a) is a matter of first impression in Colorado. In setting this standard, we find the reasoning of the divisions in *People v. Bernard*, 2013 COA 79, ¶¶ 7-13, and *Glover*, ¶¶ 20-34, both of which concern the authentication of other forms of electronic communications, instructive.

¶ 9    In *Bernard*, a division of this court concluded that an e-mail may be authenticated (1) through the testimony of a witness with personal knowledge that the e-mail is what it is claimed to be or (2) "through consideration of distinctive characteristics shown by an examination of [the] contents and substance" of the e-mail under the circumstances of the case. *Bernard*, ¶ 10 (citing CRE 901(b)(1), (4)). The witness in *Bernard* testified that (1) a printout of the contested e-mail was a true and accurate copy of the message she had personally received from the purported sender; (2) she recognized the e-mail address as belonging to the purported sender;

and (3) the contents of the e-mail indicated that it came from the purported sender. *Id.* at ¶ 11. In light of this testimony, the division concluded that the prosecution sufficiently authenticated the e-mail as being from the purported sender and, therefore, the trial court did not abuse its discretion in admitting it. *Id.* at ¶ 13.

¶ 10 More recently, in *Glover*, a division of this court expanded the *Bernard* standard, concluding that printouts of a social networking site require two levels of authentication. *Glover*, ¶ 23; *see also Bernard*, ¶ 10.

¶ 11 First, the proponent must authenticate the printouts of a social networking site as actual depictions of the site. *Glover*, ¶ 23. This may be done through testimony from someone with personal knowledge of how the printouts were obtained, or through an examination of distinctive characteristics in the printouts' content or substance. *Id.* at ¶¶ 23-24.

¶ 12 Second, the proponent must sufficiently authenticate the identity of the purported sender by showing that "the communications [sent through the social networking site] were made by [the] defendant." *Id.* at ¶¶ 23, 28. As in *Bernard*, the

4

*Glover* division concluded that the identity of the purported sender must be proved "beyond confirmation that the social networking account [was] registered to the party purporting to create [the] messages." *Glover,* ¶ 30; *see also Bernard,* ¶ 10. However, a witness with personal knowledge who testifies to any combination of at least two of the following elements would sufficiently authenticate the identity of the purported sender: (1) the account was registered to the purported sender; (2) corroborative evidence showed that the account was used by the purported sender; (3) the substance of the communications was recognizable as being from the purported sender; (4) the sender "responded to an exchange in such a way as to indicate circumstantially that he or she was in fact the author of the communication"; and (5) any other confirming evidence under the circumstances. *Glover,* ¶¶ 30-34.

¶ 13 We review a trial court's evidentiary rulings for an abuse of discretion. *Davis v. People,* 2013 CO 57, ¶ 13. A court abuses its discretion when its ruling is (1) based on an erroneous understanding or application of the law; or (2) manifestly arbitrary,

unreasonable, or unfair. *People v. Esparza-Treto*, 282 P.3d 471, 480 (Colo. App. 2011).

## B.    Analysis

¶ 14    For the following reasons, we conclude that the text messages in this case were properly authenticated and, accordingly, we perceive no error by the trial court in admitting them into evidence.

¶ 15    In light of *Glover* and *Bernard*, we conclude that authentication of text messages has two components. First, a witness with personal knowledge must testify that printouts of text message(s) accurately reflect the content of the message(s). Second, a witness with personal knowledge must provide testimony establishing the identity of the purported sender of the text message(s). Identity may be established through a combination of at least two of the following: (1) the phone number was assigned to or associated with the purported sender; (2) the substance of the text message(s) was recognizable as being from the purported sender; (3) the purported sender "responded to an exchange in such a way as to indicate circumstantially that he or she was in fact the author of the communication"; or (4) any other corroborative

6

evidence under the circumstances. *Glover*, ¶¶ 30-34. Again, "[t]he burden to authenticate 'is not high.'" *Id.* at ¶ 13 (quoting *Hassan*, 742 F.3d at 133). If such evidence has been presented, authentication of the text messages has been established under CRE 901.

¶ 16 Applying that test here, the record shows that, at trial, the prosecution introduced printouts of numerous text messages that Heisler had sent to the victim. The victim authenticated this evidence in the following ways:

- The victim testified that she recognized the pictures of the text messages and that they were a fair and accurate depiction of the texts she personally received.
- The victim testified that she recognized the phone number as Heisler's, and that she would use that number to communicate with him.
- The victim testified that she recognized the content of the text messages as being from Heisler.

¶ 17 Based on this testimony, the prosecution moved to admit the evidence. Defense counsel objected and requested voir dire.

¶ 18    During voir dire, the victim admitted that she had deleted the text messages she sent to Heisler in response.  The defense then objected to admission of the printouts because they were not a "true and accurate depiction of the conversations" between the victim and Heisler.  The trial court overruled this objection and admitted the texts into evidence.

¶ 19    As a threshold matter, we note that Heisler does not argue that the printouts of the text messages were not accurate representations of the text messages the victim received.  Nor does he contest that he was the author of the text messages.  Instead, Heisler contends that the text messages were not properly authenticated because the victim deleted her responses.  We are not persuaded.

¶ 20    First, the record reflects that the prosecution presented sufficient evidence that (1) the printouts of the text messages accurately reflected the content of the messages the victim received and (2) Heisler authored the text messages.  The victim testified that the printouts accurately reflected the texts she received, she recognized the number as being Heisler's and she would use that

number to communicate with him, she recognized the content of the text messages as being from Heisler, and the content of the text messages included corroborative evidence that they came from Heisler. *See Glover*, ¶ 13 (noting that the proponent's burden to authenticate the evidence is not high).

¶ 21 Second, the record shows that the text messages were admitted as evidence of texts the victim *received* from Heisler, not as evidence of a *conversation* between the victim and Heisler. Therefore, because the victim's testimony was sufficient to support a finding that the text messages were from Heisler (which he did not dispute), we conclude that the printouts were properly authenticated.

¶ 22 To the extent that Heisler takes issue with the victim's deletion of her responses, that issue goes to the weight of the evidence, not its authenticity. *Bernard*, ¶ 12.

¶ 23 For these reasons, we discern no error by the trial court in concluding that the text message evidence was properly authenticated.

### III. Facial Challenge to Domestic Violence Statute

¶ 24 Heisler also contends that the domestic violence sentencing statute, section 18-6-801(1)(a), C.R.S. 2016, is facially violative of his constitutional right to a jury trial under the Sixth Amendment to the United States Constitution. In that regard, he contends that section 18-6-801(1)(a) improperly authorizes a trial court to make a factual determination that the underlying crime of conviction included an act of domestic violence and that, if found by the court, such a finding mandates domestic violence treatment in addition to any other sentence imposed. Heisler thus argues that section 18-6-801(1)(a) unconstitutionally imposes a mandatory penalty above the minimum of the presumptive sentencing range (here, a $50 fine) in violation of *Alleyne v. United States*, 570 U.S. __, __, 133 S. Ct. 2151, 2155 (2013). As a corollary to this contention, Heisler also contends that the trial court should have instructed the jury to determine whether Heisler's offense included an act of domestic violence and that the court erred in denying his request for that instruction.

¶ 25    The People argue that section 18-6-801(1)(a) does not impose a penalty that increases the presumptive sentencing range, and therefore no Sixth Amendment violation occurred.

¶ 26    For the reasons below, we agree with the People.

A.    Applicable Law and Standard of Review

¶ 27    In *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), the Supreme Court announced the following rule:

> The Sixth and Fourteenth Amendments to the United States Constitution require that any fact that increases the penalty for a crime beyond the statutory maximum, except the fact of a prior conviction, must be submitted to a jury and proven beyond a reasonable doubt.

*People v. Montour*, 157 P.3d 489, 495 (Colo. 2007).  Under *Apprendi*, the Sixth Amendment "does not permit a defendant to be 'expose[d] . . . to a penalty exceeding the maximum he would receive if punished according to the facts reflected in the jury verdict alone.'" *Ring v. Arizona*, 536 U.S. 584, 588-89 (2002) (alteration in original) (quoting *Apprendi*, 530 U.S. at 483).

¶ 28    In *Blakely v. Washington*, 542 U.S. 296, 306-12 (2004), the Supreme Court applied *Apprendi* and further held that, except for the fact of a prior conviction, facts supporting the increase of a

11

sentence beyond the "statutory maximum" must be admitted by the defendant or tried to a jury and proved beyond a reasonable doubt, unless the defendant has specifically stipulated to judicial factfinding.  *See Lopez v. People*, 113 P.3d 713, 720 (Colo. 2005).

¶ 29    In *Alleyne*, 570 U.S. at __, 133 S. Ct. at 2155, the Court extended *Apprendi* and held that, with certain exceptions not relevant here, any fact that increases a defendant's mandatory *minimum* sentence must also be found by a jury under the Sixth and Fourteenth Amendments.

¶ 30    Together, *Apprendi*, 530 U.S. at 490, and *Alleyne*, 570 U.S. at __, 133 S. Ct. at 2155, prohibit the legislature from requiring "judges to impose enhanced sentences based on constitutionally impermissible judicial fact-finding [under *Blakely*, 542 U.S. at 306-12]" that raises the floor *or* ceiling of the mandatory sentencing range.  *Lopez*, 113 P.3d at 731.

¶ 31    Under Colorado law, a person is guilty of harassment where he or she directly communicates with a person by text message "in a manner intended to harass or threaten bodily injury or property

12

damage." § 18-9-111(1)(e), C.R.S. 2016.[1]  A conviction of

harassment is a class 3 misdemeanor, § 18-9-111(2), and the

presumptive sentencing range is a minimum fine of $50 and no jail

time, and a maximum fine of $750 and/or six months in jail, § 18-

1.3-501(1), C.R.S. 2016.

¶ 32    Under section 18-1.3-104(1)(a), C.R.S. 2016, a court may

alternatively order probation:

> When it appears to the satisfaction of the court
> that the ends of justice and the best interest of
> the public, as well as the defendant, will be
> served thereby, the court may grant the
> defendant probation for such period and upon
> such terms and conditions as it deems best.

---

[1]  The full text of section 18-9-111(1)(e), C.R.S. 2016, states that a person is guilty of harassment where he or she

> [d]irectly or indirectly initiates communication
> with a person or directs language toward
> another person, anonymously or otherwise, by
> telephone, telephone network, data network,
> text message, instant message, computer,
> computer network, computer system, or other
> interactive electronic medium in a manner
> intended to harass or threaten bodily injury or
> property damage, or makes any comment,
> request, suggestion, or proposal by telephone,
> computer, computer network, computer
> system, or other interactive electronic medium
> that is obscene.

13

The length of probability shall be subject to the discretion of the court and may exceed the maximum period of incarceration authorized for the classification of the offense of which the defendant is convicted but shall not exceed five years for any misdemeanor or petty offense.

§ 18-1.3-202, C.R.S. 2016.

¶ 33    As pertinent here,

[i]n addition to any sentence that is imposed upon a person for violation of any criminal law under this title, any person who is convicted of any crime, *the underlying factual basis of which has been found by the court on the record to include an act of domestic violence*, as defined in section 18-6-800.3(1)[, C.R.S. 2016], . . . shall be ordered to complete a treatment program and a treatment evaluation that conform with the standards adopted by the domestic violence offender management board as required by section 16-11.8-103(4), C.R.S. [2016].

§ 18-6-801(1)(a) (emphasis added).

¶ 34    "Domestic violence" includes any crime, "when used as a method of coercion, control, punishment, intimidation, or revenge [and] directed against a person with whom the actor is or has been involved in an intimate relationship." § 18-6-800.3(1). An "intimate relationship" includes a former relationship between a past unmarried couple. *See* § 18-6-800.3(2).

14

¶ 35 "'A trial court has broad discretion over sentencing decisions.' However, we review constitutional challenges to sentencing determinations de novo." *People v. Jaso*, 2014 COA 131, ¶ 8 (citations omitted). Further, "[o]ut of respect to the legislative and executive branches, we begin with the presumption that a statute is constitutional." *Montour*, 157 P.3d at 499.

¶ 36 "A statute is facially unconstitutional only if no conceivable set of circumstances exist under which it may be applied in a constitutionally permissible manner." *Id.* Thus, "[t]he party challenging the facial constitutionality of a statute has the burden of showing the statute is unconstitutional beyond a reasonable doubt." *Hinojos-Mendoza v. People*, 169 P.3d 662, 668 (Colo. 2007).

## B. Preservation

¶ 37 The People initially argue that Heisler failed to adequately preserve his constitutional contention. We disagree.

¶ 38 After the close of the evidence at trial, defense counsel requested a jury instruction on the domestic violence finding. Specifically, defense counsel stated:

> DEFENSE: Your Honor, I would be asking
> that [a] special interrogatory be given. I think

15

in a case like this, something like domestic violence is a factual decision. It's a decision to be decided from the facts. So I would ask the Court to give the jury . . . [a] domestic violence special interrogatory . . . [a]long with the definition of domestic violence.

¶ 39 It is clear from the record that the prosecution understood Heisler's objection to be based on the Sixth Amendment, because it objected to defense counsel's request and engaged in the following colloquy with the court:

> PROSECUTION: . . . [W]hat triggers *Apprendi* [is] not what we have in this case. There is no greater sentence that the Court would be imposing. The Court could sentence the defendant to domestic violence treatment regardless of the jury finding. . . .
>
> COURT: I want to make sure I understand your argument. You're saying that the domestic violence designation in this case . . . cannot increase the sentence beyond the prescribed statutory maximum in this matter; is that correct?
>
> PROSECUTION: That is correct, Your Honor.

¶ 40 Ultimately, the trial court denied Heisler's request, concluding that *Apprendi*, 530 U.S. at 490, and *Blakely*, 542 U.S. at 306-12, did not require the jury to determine whether the underlying conviction included an act of domestic violence.

16

¶ 41    Further, based on our review of the record, Heisler reasserted

a Sixth Amendment argument at the sentencing hearing.

¶ 42    Although we recognize that Heisler did not precisely raise a

facial Sixth Amendment challenge to section 18-6-801(1)(a) under

*Alleyne*, 570 U.S. at __, 133 S. Ct. at 2155, "[w]e do not require that

parties use 'talismanic language' to preserve particular arguments

for appeal, but the trial court must be presented with an adequate

opportunity to make findings of fact and conclusions of law on any

issue before we will review it." *People v. Melendez*, 102 P.3d 315,

322 (Colo. 2004).

¶ 43    We conclude that "defense counsel offered the trial court an

adequate opportunity to commence a sufficient inquiry into the

[Sixth Amendment] violation" under *Apprendi*, 530 U.S. at 490, and

its progeny. *Melendez*, 102 P.3d at 322. Therefore, this issue was

properly preserved for our review. *Id.*

C.    Analysis

¶ 44    We hold, as a matter of first impression in Colorado, that

section 18-6-801(1)(a), which allows a trial court to make a factual

finding that the defendant's underlying criminal conviction included

an act of domestic violence, does not run afoul of the Sixth Amendment under *Alleyne*, 570 U.S. at \_\_, 133 S. Ct. at 2155. Accordingly, we discern no error in the trial court's resolution of this issue, although we reach our conclusion based on different reasoning. *Makeen v. Hailey*, 2015 COA 181, ¶ 21 ("[W]e can affirm on any grounds supported by the record.").

¶ 45 For the reasons set forth below, we conclude that court-ordered domestic violence treatment, imposed pursuant to section 18-6-801(1)(a), is not a form of punishment and, therefore, the statute does not mandate a "penalty" as contemplated by *Apprendi*, 530 U.S. at 490, and its progeny. *See, e.g.*, *People v. Rowland*, 207 P.3d 890, 895 (Colo. App. 2009) (concluding that the statutory sexually violent predator community notification requirement did not impose punishment and, therefore, did not violate the Sixth Amendment under *Apprendi*); *People v. Stead*, 66 P.3d 117, 120-23 (Colo. App. 2002) (same), *overruled on other grounds by Candelaria v. People*, 2013 CO 47, ¶ 8.

¶ 46 To begin, we note that an essential prerequisite to the Sixth Amendment inquiry under *Apprendi* and *Alleyne* is that the

sentence must be punitive in nature. *See Alleyne*, 570 U.S. at __,

133 S. Ct. at 2158-60; *Blakely*, 542 U.S. at 306-12; *Apprendi*, 530

U.S. at 490-95; *see also Rowland*, 207 P.3d at 895 (concluding that

where a sentence is not punitive in nature, *Apprendi* is

inapplicable); *Stead*, 66 P.3d at 123 (same). Although not argued

by the parties, in our view, the seven-factor test set forth in

*Kennedy v. Mendoza-Martinez*, 372 U.S. 144, 168-69 (1963), is the

proper analytical framework for determining whether a sentence

imposes a form of punishment. Based on our analysis of these

factors below, we conclude that the prerequisite of punishment is

not satisfied here.

¶ 47     In *Mendoza-Martinez*, the United States Supreme Court

adopted a seven-factor test to determine whether a sentence is

punitive in nature:

> [1] [w]hether the sanction involves an
> affirmative disability or restraint, [2] whether it
> has historically been regarded as a
> punishment, [3] whether it comes into play
> only on a finding of scienter, [4] whether its
> operation will promote the traditional aims of
> punishment — retribution and deterrence, [5]
> whether the behavior to which it applies is
> already a crime, [6] whether an alternative
> purpose to which it may rationally be

19

> connected is assignable for it, [7] and whether it appears excessive in relation to the alternative purpose assigned are all relevant to the inquiry, and may often point in differing directions.

*Id.* (footnotes omitted). No one factor is controlling. *Rowland*, 207 P.3d at 893.

¶ 48 "Absent conclusive evidence of congressional intent as to the penal nature of a statute, [the *Mendoza-Martinez*] factors must be considered in relation to the statute on its face." Mendoza-Martinez, 372 U.S. at 169. Because section 18-6-801(1)(a) contains no express legislative declaration regarding its purpose, we apply the *Mendoza-Martinez* factors to determine whether section 18-6-108(1)(a) imposes a form of punishment. *Mendoza-Martinez*, 372 U.S. at 169; *see also Rowland*, 207 P.3d at 892; *Stead*, 66 P.3d at 120-21.

### 1. No Affirmative Disability or Restraint

¶ 49 We first conclude that the domestic violence treatment program does not impose an "affirmative disability or restraint," let alone restraint approaching "the infamous punishment of imprisonment." *In re Cardwell*, 50 P.3d 897, 904 (Colo. 2002) (quoting *Hudson v. United States*, 522 U.S. 93, 104 (1997)).

20

Specifically, domestic violence treatment "does not, on its face, restrict where an offender may live or work and does not alter either the length of [probation or] incarceration." *Rowland*, 207 P.3d at 893; *see also Stead*, 66 P.3d at 121.

### 2. Not Historically Regarded as Punishment

¶ 50 We next conclude that domestic violence treatment, which prioritizes rehabilitation as well as victim and public safety, is not analogous to traditional forms of punishment.

¶ 51 The plain language of section 18-6-801(1)(a) mandates that a court-ordered domestic violence treatment program and treatment evaluation comport with the standards devised by the domestic violence offender management board (the Board) under section 16-11.8-103(4); *see also Partners in Change, L.L.C. v. Philp*, 197 P.3d 232, 235 (Colo. App. 2008) ("Section 18-6-801(1)(b) unambiguously requires that, if treatment is recommended, the treatment program must conform with the [Board] [s]tandards.").

¶ 52 Under section 16-11.8-103(4), the Board shall

> provide for the evaluation and recommend
> behavior management, monitoring, and
> treatment [of domestic violence offenders;] . . .
> [and] develop and implement methods of
> intervention for domestic violence offenders

21

that have as a priority the physical and psychological safety of victims and potential victims and that are appropriate to the needs of the particular offender, so long as there is no reduction in the level of safety of victims and potential victims.

§ 16-11.8-103(4)(a)(I). Further, the treatment programs must

be as flexible as possible so that the programs may be utilized by each offender to prevent the offender from harming victims and potential victims[;] . . . [and] shall be structured in such a manner that they provide a continuing monitoring process as well as a continuum of treatment programs for each offender as that offender proceeds through the criminal justice system.

§ 16-11.8-103(4)(a)(II).

¶ 53    Lastly, "[i]f an intake evaluation conducted by an approved treatment program provider discloses that sentencing to a treatment program would be inappropriate" for the defendant, for any of the concerns outlined in section 16-11.8-103(4)(a), "the [defendant] shall be referred back to the court for alternative disposition." § 18-6-801(1)(a).

¶ 54    In our view, the rehabilitative nature of the domestic violence treatment program is clearly set forth in the statutory scheme. We further conclude that such treatment is not analogous to traditional

22

forms of punishment. *See, e.g., Rowland*, 207 P.3d at 892. Indeed, domestic violence treatment is more akin to other sentences, imposed through judicial factfinding, that Colorado courts have concluded do not violate *Apprendi* or its progeny. *Id.* at 895 (concluding that the Sixth Amendment right to have certain facts found by a jury beyond a reasonable doubt does not apply to the sexually violent predator community notification requirement because such notification is not punitive); *see also People v. Smith*, 181 P.3d 324, 326-27 (Colo. App. 2007) (holding that the Sixth Amendment right to have certain facts found by a jury beyond a reasonable doubt does not apply to restitution orders because, inter alia, restitution is not punitive).

¶ 55    Other Colorado cases give further context to the nature of punishment. *See Allen v. People*, 2013 CO 44, ¶ 7 (concluding that a sexually violent predator determination is not punitive in nature); *In re Cardwell*, 50 P.3d at 904 (concluding that attorney regulation proceedings and sanctions are not punitive in nature, but are designed to protect public safety); *People v. Milton*, 732 P.2d 1199, 1203-04 (Colo. 1987) (holding that a forfeiture sanction is not

23

punitive, but remedial, in nature); *People In Interest of C.J.R.*, 2016

COA 133, ¶ 28 (noting that civil commitment for mental health

treatment is not punitive in nature); *Mayo v. People*, 181 P.3d 1207,

1212 (Colo. App. 2008) (concluding that the sex offender

registration requirement is not punitive in nature, but, rather, is

designed to aid law enforcement officials and protect public safety);

*People v. Howell*, 64 P.3d 894, 899 (Colo. App. 2002) (concluding

that imposition of costs is not punitive, but remedial, in nature).[2]

¶ 56     Thus, we conclude that sentencing a defendant to domestic

violence treatment is not a traditional form of punishment.

### 3.     No Requirement of a Finding of Scienter

¶ 57     Under the plain language of section 18-6-801(1)(a), the trial

court does not need to make a scienter finding.  *See* § 18-6-800.3(1)

(defining act of domestic violence); *see also Candelaria*, ¶¶ 8-17

(undertaking scienter analysis).

### 4.     Deterrence and Retribution

---

[2] Indeed, courts in other jurisdictions have addressed almost
identical arguments to Heisler's contention here, and they have
concluded that the Sixth Amendment poses no barrier to court
findings of domestic violence.  *See, e.g., Hitch v. State*, 51 N.E.3d
216, 219-20 (Ind. 2016).

¶ 58    The domestic violence treatment program does have a goal of deterrence, because such treatment is specifically designed to reduce the occurrence of future acts of domestic violence.  *See* § 16-11.8-103(4)(a)(II).  However, because we have already concluded that the treatment program is not retributive in nature, *see* § 16-11.8-103(4)(a)(I)-(II), the weight of this factor is slight.  *See Rowland*, 207 P.3d at 894.

### 5.    Criminal Behavior

¶ 59    The behavior to which domestic violence treatment attaches is a crime.  *See* § 18-6-801(1)(a); *cf. Rowland*, 207 P.3d at 894 ("However, the Supreme Court has de-emphasized this factor, pointing out that 'Congress may impose both a criminal and a civil sanction in respect to the same act or omission.'" (quoting *United States v. Ward*, 448 U.S. 242, 250 (1980))).

### 6.    Alternative Purpose Rationally Connected to Domestic Violence Treatment

¶ 60    We further conclude that a finding of domestic violence is rationally connected to court-ordered rehabilitative treatment.  *See Stead*, 66 P.3d at 122.  The domestic violence statute is narrowly drawn, because it limits the treatment program to only those

25

individuals who (1) have committed an act of domestic violence; (2) would benefit from such treatment; and (3) would not pose a risk to victims or potential victims. *See id.*; *see also* § 16-11.8-103(4)(a)(I); § 18-6-801(1)(a). Therefore, "the General Assembly has attempted to tailor the purpose of the [program] to its actual effect." *Stead*, 66 P.3d at 122.

¶ 61 Moreover, we discern no alternative, punitive purpose to the imposition of domestic violence treatment that undercuts its rehabilitative purpose. *See Mendoza-Martinez*, 372 U.S. at 168-69.

### 7. No Excessive Burden

¶ 62 Finally, we conclude that, to the extent the domestic violence treatment program imposes burdens on a defendant, they are not excessive. We recognize that the domestic violence treatment program "is not without [some] burdensome consequences to the [defendant]," in terms of cost and duration, but "[treatment] is primarily directed toward achieving the salutary goal of preventing and terminating [domestic violence]," *Milton*, 732 P.2d at 1204, and therefore does not impose an excessive burden on defendants.

¶ 63 In conclusion, the *Mendoza-Martinez* analysis indicates that court-ordered domestic violence treatment, based on a trial court's

26

finding of domestic violence under section 18-6-801(1)(a), does not

impose a punishment as a matter of law.  Therefore, we conclude

that the statute is not facially unconstitutional under *Alleyne*, 570

U.S. at __, 133 S. Ct. at 2155.  *See Rowland*, 207 P.3d at 892;

*Stead*, 66 P.3d at 123.[3]

¶ 64    In sum, we perceive no error by the trial court in making a

finding of domestic violence under the domestic violence statute.  In

light of our resolution of this issue, we further perceive no error in

---

[3]  Our resolution of this issue further comports with the more basic theme articulated in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000), and its progeny, that an unconstitutional aggravated sentence must aggravate the same *kind* of sentence.  In this regard, a treatment program is materially different from the presumptive sentencing range at issue in this case, which involves jail time and/or punitive fines, and therefore cannot be viewed as aggravating either the minimum or maximum sentences in the applicable presumptive range.  *See Alleyne v. United States*, 570 U.S. __, __, 133 S. Ct. 2151, 2156 (2013) (aggravating prison term with additional prison time); *S. Union Co. v. United States*, 567 U.S. 343, __ (2012) (aggravating punitive fine range with additional fine); *United States v. O'Brien*, 560 U.S. 218, 223 (2010) (aggravating prison term with additional prison time); *United States v. Booker*, 543 U.S. 220, 226 (2005) (aggravating prison term with additional prison time); *Blakely v. Washington*, 542 U.S. 296, 306-12 (2004) (aggravating prison term with additional prison time); *Ring v. Arizona*, 536 U.S. 584, 588 (2002) (aggravating prison term with death sentence); *Apprendi*, 530 U.S. at 468 (aggravating prison term with additional prison time).

the court's denial of Heisler's request for a jury instruction under *Blakely*, 542 U.S. at 306-12, and we need not further consider that argument. *See Club Matrix, LLC v. Nassi*, 284 P.3d 93, 99 (Colo. App. 2011) (stating that we need not address additional arguments rendered moot by our ultimate disposition of an issue).

## IV. Conclusion

¶ 65  The judgment and sentence are affirmed.

JUDGE ROTHENBERG and JUDGE CASEBOLT concur.