2013 CO 44

**Brandon David ALLEN, Petitioner**

v.

**The PEOPLE of the State of Colorado, Respondent**

**Supreme Court Case No. 11SC29**

Supreme Court of Colorado,
En Banc.

July 1, 2013

Attorneys for Petitioner: John W. Suthers, Attorney General Katharine J. Gillespie, Assistant Attorney General Denver, Colorado.

Attorneys for Respondent:Douglas K. Wilson, Public Defender Karen M. Gerash, Deputy Public Defender Denver, Colorado.

Justice RICE delivered the Opinion of the Court.

¶ 1 This case arises out of Petitioner Brandon David Allen's designation as a sexually violent predator ("SVP"). The court of appeals affirmed the trial court's SVP designation and held that the trial court could designate an offender as an SVP even if the offender is deemed unlikely to recidivate based on his low score on the Sex Offender Management Board's ("SOMB") risk assessment screening instrument (the "Screening Instrument"). After considering section 18–3–414.5(1)(a)(IV), C.R.S. (2012), we hold that the trial court makes the ultimate SVP designation, but should give substantial deference to the scored Screening Instrument. A trial court that deviates from the results of the scored Screening Instrument must make specific findings on the record to demonstrate the necessity of the deviation. We apply our interpretation of the recidivism criterion to the facts of this case and hold that the court of appeals properly upheld Allen's SVP designation.

## I. Facts and Procedural History

¶ 2 In June 2006, a masked intruder broke into the victim's home in Colorado Springs, placed a pillow over her face, grabbed her by the throat, threatened to kill her, and repeatedly raped her over the course of several hours. On October 18, 2007, the victim's neighbor, Allen, pleaded guilty to first-degree sexual assault, second-degree burglary, and second-degree assault in connection with the attack. The trial court sentenced Allen to twenty years to life in prison for the first-degree sexual assault to run consecutively to two concurrent five-year terms for the second-degree burglary and second-degree assault convictions. Given his conviction for first-degree sexual assault, a SOMB evaluator administered the Screening Instrument. The evaluator scored Allen's Screening Instrument and provided that score to the trial court. Allen did not score high enough on the Screening Instrument to meet the recidivism criterion of the SVP statute.[1] The trial court, however, disagreed with Allen's score on the Screening Instrument. The trial court re-scored Allen's Screening Instrument, and then, based on the revised score, found that Allen met the recidivism criterion of the SVP statute. Because Allen also met the other three SVP criteria, the trial court designated Allen as an SVP. Allen appealed his SVP designation to the court of appeals.

¶ 3 The court of appeals affirmed the trial court's SVP designation. *People v. Allen,* No. 08CA2098, 310 P.3d 83, 85–86, at 6, 2010 WL 4782249 (Colo. App. Nov. 24, 2010) (se-

---

1. Despite Allen's score, the SOMB evaluator recommended that "given the severity of [Allen's] crime and his inability to remember [the assault], he should receive mental health/sex offense treatment and be monitored as [an SVP.]"

lected for official publication). Without explicitly resolving how a trial court should use the scored Screening Instrument, the court of appeals held that the scored Screening Instrument merely aids the trial court in determining whether an offender meets the recidivism criterion. *Id.* The court of appeals noted that holding "otherwise would effectively cede the court's sentencing discretion to the [scored Screening Instrument] and render the [scored Screening Instrument] essentially unreviewable." *Id.* Allen petitioned this Court for certiorari review of the court of appeals' decision. We granted certiorari to determine whether an offender may be designated as an SVP contrary to his score on the Screening Instrument.

## II. Standard of Review

¶ 4 We interpret the SVP statute de novo. *See Clyncke v. Waneka,* 157 P.3d 1072, 1076 (Colo.2007). We then review the trial court's SVP designation—a mixed question of law and fact—by deferring to the trial court's factual findings when they are supported by the record, and reviewing de novo the trial court's legal conclusions regarding whether an offender should be designated as an SVP. *People v. Cook,* 197 P.3d 269, 280 (Colo.App.2008); *People v. Tixier,* 207 P.3d 844, 849 (Colo.App.2008).

## III. Analysis

¶ 5 To start, we discuss the unique nature of the SVP designation. Next, we describe the SOMB's role in developing the Screening Instrument, and then describe how the SOMB-trained evaluator scores the Screening Instrument in each case. Finally, we hold that under section 18–3–414.5(1)(a)(IV), the trial court makes the ultimate SVP designation, but should give substantial deference to the scored Screening Instrument. In light of our understanding of section 18–3–414.5(1)(a)(IV), we also hold that a trial court that deviates from the results of the scored Screening Instrument must make specific findings on the record to demonstrate the necessity of the deviation.

### A. SVP Designation Process

¶ 6 We first generally describe the nature of the SVP designation. The trial court designates an offender as an SVP when the offender: (1) was eighteen years of age or older as of the date of the offense; (2) was convicted of an enumerated sexual offense; (3) committed the offense against a victim who was a stranger or was a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and (4) is likely to recidivate. *See* § 18–3–414.5(1)(a)(I)–(IV).

¶ 7 Unlike a criminal sentence, the SVP designation is not punishment. *See People v. Stead,* 66 P.3d 117, 123 (Colo.App. 2002) (holding that the internet registration required for SVP designation is not punishment); *see also Jamison v. People,* 988 P.2d 177, 180 (Colo.App.1999) (holding that sex offender registration is not punishment). Instead, the SVP designation's "stated purpose is to protect the community." *People v. Rowland,* 207 P.3d 890, 894 (Colo.App.2009). Thus, a trial court's decision to designate an offender as an SVP is legally and practically distinct from its sentencing function. And, though the SVP statute is housed in the criminal code, the designation is met with a civil burden of proof. *See* § 18–3–414.5(1)(a)(IV). A trial court's finding that an offender is an SVP, then, is most accurately described as a "designation," unique to the SVP context. Consistent with the unique nature of the SVP designation, the SOMB and the trial court must follow a unique process to designate an offender as an SVP.

¶ 8 The SOMB's first role in this process is to develop the Screening Instrument. When it created the SOMB, "[t]he General Assembly recognized the necessity of … providing for the comprehensive evaluation of sex offenders subject to the supervision of the criminal justice system and created a program that standardizes such evaluation." *People v. Brosh,* 251 P.3d 456, 459-60 (Colo. App.2010). To that end, the SOMB creates a Screening Instrument which utilizes evidence-based standards for the evaluation, identification, treatment, management, and monitoring of sex offenders. See § 16–11.7–101(2), C.R.S. (2012) (declaring the General

Assembly's intent to "create a program that establishes evidence-based standards for the evaluation, identification, treatment, management, and monitoring of adult sex offenders"). Ultimately, then, the SOMB—working with the division of criminal justice to employ the most current sex offender risk assessment research available—consults on, approves, and revises the Screening Instrument as necessary to assist the trial courts in determining the likelihood that an adult sex offender will recidivate. § 16–11.7–103(4)(d), C.R.S. (2012).

¶ 9 When an offender is convicted of an enumerated offense, *see* § 18–3–414.5(1)(a)(II), a SOMB-trained evaluator administers the Screening Instrument. The evaluator reviews numerous relevant data sources including, but not limited to, the record of the offender's criminal history, the pre-sentence investigation report, and the police report from the underlying charges during the scoring. *See SOMB Handbook: Sexually Violent Predator Assessment Screening Instrument for Felons, Background and Instruction*, 68 (June 2003), http://dcj.state.co.us/ors/pdf/docs/Final %20SVP.pdf (hereinafter *SOMB Handbook*). Although the SVP statute only expressly directs the SOMB to address the recidivism criterion in the Screening Instrument, *see* § 18–3–414.5(1)(a)(IV), the SOMB developed the Screening Instrument in such a way that requires the evaluator to confirm that the offender has satisfied the first three criteria of the SVP statute before reaching the recidivism analysis. *SOMB Handbook* at 67–70 (identifying the four SVP designation criteria).

¶ 10 After the evaluator assesses the offender's satisfaction of the first three SVP criteria, the Screening Instrument scoring procedure turns to the recidivism criterion. The June 2003 Screening Instrument used to evaluate Allen provided that an offender was likely to recidivate if he met at least four out of the ten descriptors contained in the "sex offender risk scale" ("SORS") portion of the Screening Instrument. *SOMB Handbook* at

72–73. Six of those 2003 SORS descriptors pertained to the offender's background. *See id.* For example, one SORS descriptor asked whether "[t]he offender was employed less than full time at the time of the arrest." *Id.* at 72. The remaining four descriptors concerned the offender's crime, the degree to which the offender accepted responsibility for his conduct, and, more generally, the offender's sexual deviancy. *Id.*[2] Additionally, though not considered by the evaluator in Allen's case, the June 2003 Screening Instrument provided an alternate method to determine an offender's likelihood to recidivate: his "mental abnormality," as derived from a series of mental health evaluations. *Id.* at 73. The Screening Instrument scoring component of the SVP designation process ends when the evaluator finishes scoring the recidivism portion of the Screening Instrument.

¶ 11 After scoring, the evaluator submits the scored Screening Instrument to the trial court to "assist the [trial court] in determining the likelihood that an adult sex offender" will recidivate. § 16–11.7–103(4)(d). In addition to assessing whether the offender has satisfied the three criteria of the SVP statute that are not at issue in this case, the trial court must also analyze whether the offender has satisfied the recidivism criterion "based upon the results of [the scored Screening Instrument]," § 18–3–414.5(1)(a)(IV), to designate the offender as an SVP. We now discuss a question of first impression before this Court: Whether the recidivism criterion requires the trial court to defer to the scored Screening Instrument's assessment of the offender's likelihood to recidivate, or if the trial court ultimately makes the recidivism determination by way of its own independent analysis.

## B. The Trial Court Should Substantially Defer to the Scored Screening Instrument

¶ 12 We review the plain language of the recidivism criterion of the SVP statute and hold that the trial court ultimately makes

2. Unlike the June 2003 Screening Instrument, the current Screening Instrument does not include any "dynamic factors," i.e., those factors that consider the actual crime. Instead, the current Screening Instrument considers an offender's historical conduct to determine whether the offender might recidivate.

the SVP designation, but should give substantial deference to the scored Screening Instrument. To that end, a trial court that deviates from the results of the scored Screening Instrument may only do so after making specific findings justifying the deviation.

¶ 13 To qualify for SVP designation, an offender must meet four criteria:

I. [The offender] is eighteen years of age or older as of the date the offense is committed [or, if younger than eighteen, is tried as an adult];

II. [the offender has been] convicted on or after July 1, 1999, of one of [the enumerated offenses,] or of an attempt, solicitation, or conspiracy to commit [one of the enumerated offenses];

III. [the offender's] victim was a stranger to the offender or a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and

IV. [the offender], based upon the results of [the scored Screening Instrument] ... is likely to subsequently commit [an enumerated offense against a stranger or a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization.]

§ 18–3–414.5(1)(a)(I)–(IV).

¶ 14 An offender meets the fourth, recidivism criterion in the SVP statute where, *based upon* the results of" the scored Screening Instrument, he is deemed "likely to subsequently commit" a sexually violent crime in the manner described in the relationship criterion. § 18–3–414.5(1)(a)(IV) (emphasis added). The criminal code does not define "based upon," thus, we examine "its commonly accepted meaning." *Fogg v. Macaluso*, 892 P.2d 271, 274 (Colo.1995); *see Tidwell ex rel. Tidwell v. City & Cnty. of Denver*, 83 P.3d 75, 82 (Colo.2003). Webster's New College Dictionary defines "based" as "to make or form a base or foun-

dation for." *Webster's New College Dictionary* 119 (2005). The MacMillan English Dictionary provides an even more apt definition for our inquiry, defining "based on"[3] as "to use particular ideas or facts to make a decision." *MacMillan Dictionary* (1st ed. 2002). Typically, then, the trial court should use the scored Screening Instrument to make a decision regarding an offender's SVP designation; the scored Screening Instrument will accordingly serve as the foundation for a trial court's SVP designation. Thus, reading "based upon" with its commonly accepted meaning, the recidivism criterion of section 18–3–414.5(1)(a)(IV) directs the trial court to defer to the scored Screening Instrument to make a decision regarding an offender's likelihood to subsequently commit a sexually violent crime against a stranger or person with whom the offender has established or promoted a relationship primarily for the purpose of sexual victimization.

¶ 15 The statute describing the SOMB's duties provides contextual support for our interpretation of "based upon." *See* § 16–11.7–103(4)(d). That provision states that the Screening Instrument is designed to "assist the sentencing court in determining the likelihood that an adult sex offender" will recidivate. *Id.* "Assist" is commonly understood as "to give help to; aid." *Webster's New College Dictionary* 85 (2005). Accordingly, the results of the scored Screening Instrument should serve as the primary aid in the trial court's SVP designation, and a trial court that does not follow the scored Screening Instrument's recommendation should make specific record findings supporting its deviation.

¶ 16 Moreover, the trial court should not re-score the Screening Instrument. The SOMB develops the Screening Instrument using the most up-to-date sex offender risk assessment research and trains evaluators on how to properly score the Screening Instrument to ensure less variation between offenders' scores. Rather, consistent with our holding, the trial court should substantially defer to the scored Screening Instrument's

---

**3.** "On" is generally interchangeable with "upon" and nothing in this context suggests otherwise.

See *Webster's New College Dictionary* 1570 (2005).

conclusions when determining whether to designate an offender as an SVP.

¶ 17 It follows that a trial court that deviates from the results of the scored Screening Instrument must make specific findings on the record to demonstrate the necessity of the deviation. Thus, the trial court's ultimate SVP designation must be based upon specific facts in the record that tend to indicate that the offender is likely to recidivate.

## IV. Application

¶ 18 Having determined the appropriate role for the Screening Instrument and the trial court in the SVP designation process, we now turn to the issue of Allen's SVP designation. We agree with the court of appeals' affirmation of the trial court's determination that Allen was likely to recidivate and therefore was appropriately designated as an SVP. We defer to the trial court's factual findings, but review the defendant's SVP designation de novo. *Cook*, 197 P.3d at 280.

¶ 19 Allen meets the first three criteria in the SVP statute, and does not contend otherwise. We therefore begin our analysis with the Screening Instrument scored by the SOMB evaluator to determine whether Allen meets the recidivism criterion. Allen only scored one out of ten on the Screening Instrument. Specifically, the evaluator checked the "admission of offense" or "accountability" risk descriptor box because, despite his guilty plea, Allen still denied sexually assaulting the victim. By the terms of the scored Screening Instrument, then, Allen is not considered likely to recidivate. Our independent review of the record, however, leads us to hold that Allen should be designated as an SVP.

¶ 20 Because our SVP designation deviates from the results of Allen's scored Screening Instrument, we review the record and designate Allen as an SVP. The record includes several facts this Court finds highly relevant. Notably, the record indicates that Allen like-

ly had "deviant sexual fantasies." Allen's deviant sexual fantasies, in light of his sexual assault conviction, suggest to this Court a greater willingness to engage in the predatory sexual crimes enumerated in the SVP statute. Allen also "has difficulty with relationships." This lack of stability in his personal life and inability to develop meaningful relationships suggests he may be an increased danger to recidivate if he is ever released from custody.

¶ 21 Allen's behavior after the sexual assault also belies Allen's claim that he should not be designated as an SVP. After the assault, Allen threatened to kill the victim to avoid punishment. And, after pleading guilty, Allen vacillated between denying committing the crime and blaming his conduct on anti-malaria medicine from his time in the army. Allen's behavior after the assault is sufficiently threatening and detached to suggest that Allen is likely to recidivate.

¶ 22 Two additional facts from the record indicate that Allen is likely to commit another crime against a stranger. First, Allen admitted that when he was 14–years–old a woman Allen barely knew obtained a restraining order against him because he repeatedly harassed her. More recently, a different woman claimed that Allen often touched her, directed inappropriate sexual comments towards her, and that she once saw Allen running away from her house after hearing a window in her house break. She also sought and obtained a restraining order against Allen.

¶ 23 While Allen's low score on the Screening Instrument would typically control his SVP designation, our independent review of the record reveals that the trial court ultimately reached the correct conclusion.[4] Allen meets the recidivism criterion of the SVP statute. He is likely to commit an enumerated sexually violent crime against a stranger or a person with whom he established or promoted a relationship primarily for the purpose of sexual victimization. Allen meets the remaining statutory criteria under section 18–3–414.5(1)(a); therefore, we affirm

---

4. Consistent with our holding, however, we disapprove of the trial court's decision to re-score Allen's Screening Instrument.

the court of appeals' judgment and uphold Allen's SVP designation.

## V.   Conclusion

¶ 24 We hold that the trial court ultimately determines whether an offender is likely to recidivate, but should substantially defer to the results of the scored Screening Instrument. Further, we hold that the trial court has the authority to make the final SVP designation. A trial court that deviates from the results of the scored Screening Instrument must make specific findings on the record to demonstrate the necessity of the offender's SVP designation.

¶ 25 In this case, Allen, an offender who pleaded guilty to a brutal sexual assault and whose conduct before and after the crime indicated likelihood to recidivate, was properly designated as an SVP despite his low score on the Screening Instrument. We therefore affirm the court of appeals' judgment.

Justice MÁRQUEZ concurring in the judgment.

Justice COATS dissents.

Justice MÁRQUEZ, concurring in the judgment.

¶ 26 I concur in the judgment because I agree that section 18–3–414.5(2), C.R.S. (2012), requires the trial court ultimately to determine whether an offender shall be designated a sexually violent predator ("SVP") as defined by section 18–3–414.5(1)(a), C.R.S. (2012), and because I conclude that the trial court did not err in making that designation in this case. However, I write separately because I disagree with the majority's suggestion that a court (including this court) may effectively disregard the recidivism risk assessment screening instrument and instead independently determine an offender's likelihood to recidivate for purposes of section 18–3–414.5(1)(a)(IV), C.R.S. (2012), based on whatever factors the court deems relevant. The majority holds that the trial court "should give substantial deference" to the results of the risk assessment screening instrument. Maj. op. ¶ 12. Yet the majority proceeds to resolve Allen's case giving virtu-

ally no deference to the instrument. Indeed, rather than deferring to the evidence-based risk factors contained within the risk assessment screening instrument, the majority independently opines on Allen's likelihood to recidivate for purposes of section 18–3–414.5(1)(a)(IV), based on factors in the record it deems to be "highly relevant." *Id.* ¶ 20. In my view, the majority's admonition that a trial court give "substantial deference" to the risk assessment screening instrument becomes illusory if the trial court (or this court) may deviate from that assessment on virtually any grounds the court independently predicts may be indicative of recidivism.

¶ 27 The majority's disregard for the risk assessment screening instrument contravenes the plain language of the statutory scheme and clear legislative intent to ground the risk of recidivism prong of the SVP designation in empirical research and analysis of evidence-based practices. In so doing, the majority minimizes the legislature's judgment that the evidence-based risk assessment is the most reliable tool available to the court to determine an offender's likelihood to recidivate for purposes of section 18–3–414.5(1)(a)(IV). I agree with the majority that a trial court is not bound by an evaluator's assessment regarding an offender's risk of recidivism, and that where a trial court disagrees with the evaluator's recidivism assessment, it must support its decision with findings, on the record. However, in my view, the trial court's determination with respect to this criterion of the SVP determination nevertheless must be "based upon" the recidivism risk factors in the risk assessment screening instrument.

## I.

¶ 28 The general assembly has declared that "persons who are convicted of offenses involving unlawful sexual behavior and who are identified as sexually violent predators pose a high enough level of risk to the community that persons in the community should receive notification concerning the identity of these sexually violent predators." § 16–13–

901, C.R.S. (2012).[5] The general assembly has provided for the designation of certain sex offenders as "sexually violent predators" in order to safeguard the public against their future criminal behavior. *See* § 16–11.7–101, C.R.S. (2012). To that end, an SVP designation results in active notification to the community regarding the offender's identity. § 16–13–901. Importantly, the general assembly has recognized "the high potential for vigilantism that often results from community notification and the dangerous potential that the fear of such vigilantism will drive a sex offender to disappear and attempt to live without supervision." *Id.* Therefore, it has declared that such active notification should only occur in cases involving a "high degree of risk to the community." *Id.*

¶ 29 Section 18–3–414.5(1)(a) defines a "sexually violent predator" as an offender:

(I) Who is eighteen years of age or older as of the date the offense is committed [or, if younger than eighteen, is tried as an adult];

(II) Who has been convicted on or after July 1, 1999, of [a qualifying sexual offense], or of an attempt, solicitation, or conspiracy to commit [a qualifying sexual offense];

(III) Whose victim was a stranger to the offender or a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and

(IV) Who, based upon the results of a risk assessment screening instrument developed by the division of criminal justice in consultation with and approved by the sex offender management board established pursuant to section 16–11.7–103(1), C.R.S., is likely to subsequently commit one or more [qualifying sexual offenses] under the

circumstances described in [paragraph (a)(III)].

§ 18–3–414.5(1)(a)(I)–(IV), C.R.S. (2012).

¶ 30 Under the statute, the trial court determines whether an offender meets all four criteria necessary to qualify for SVP designation. § 18–3–414.5(2) (" [T]he court shall make specific findings of fact and enter an order concerning whether the defendant is a sexually violent predator."). These criteria represent a legislative judgment as to which offenders qualify as "sexually violent predators," that is, those offenders who pose a sufficiently high risk to the community to warrant active community notification. First, section 18–3–414.5(1)(a)(I) requires the offender to be an adult or to have been tried as an adult. Second, the offender must have committed (or attempted, solicited, or conspired to commit) one of the qualifying offenses enumerated in section 18–3–414.5(1)(a)(II). These qualifying offenses, which are limited to offenses involving actual sexual contact, generally reflect violent behaviors.[6] Third, section 18–3–414.5(1)(a)(III) examines the relationship between the offender and the victim. This criterion focuses on the "predatory" nature of the offense. An offender meets this criterion if he targeted a "stranger" or "established or promoted a relationship" with the victim "primarily for the purpose of sexual victimization." This criterion reflects a legislative judgment that offenders who demonstrate a propensity to target a broader pool of victims pose a higher risk to the broader community. *People v. Hunter*, 2013 CO 48, ¶22, 307 P.3d 1083, 2013 WL 3322219 (Márquez, J., dissenting). Finally, section 18–3–414.5(1)(a)(IV) concerns the likelihood that the offender will commit additional violent and predatory sexual offenses in the future. At issue here is this fourth criterion.

---

5. The majority concludes that, unlike a criminal sentence, an SVP designation is not punishment. Maj. op. ¶ 7 (citing *People v. Stead*, 66 P.3d 117, 123 (Colo.App.2002); *Jamison v. People*, 988 P.2d 177, 180 (Colo.App.1999)). I do not necessarily disagree with this statement; however, because the issue was not squarely raised, I would simply assume, without deciding, that an SVP designation is not criminal punishment.

6. By comparison, "unlawful sexual behavior" is more broadly defined to include relatively passive behaviors, such as indecent exposure. See § 16–22–102(9), C.R.S. (2012); *cf.*§ 16–22–103(2), C.R.S. (2012) (requiring any person convicted of a crime the underlying factual basis of which involved "unlawful sexual behavior" to register as a sex offender).

¶ 31 Unlike the age, qualifying offense, and relationship criteria of the SVP designation, the offender's risk of recidivism must be "based upon the results of a risk assessment screening instrument" developed by the division of criminal justice ("DCJ") in consultation with, and approved by, the sex offender management board ("SOMB"). *Compare* § 18–3–414.5(1)(a)(IV), *with* § 18–3–414.5(1)(a)(I)–(III); *see also* § 24–33.5–503(*o*), C.R.S. (2012). The SOMB is comprised of twenty-five individuals with "expertise in adult and juvenile issues relating to persons who commit sex offenses." § 16–11.7–103(1), C.R.S. (2012). Section 16–11.7–103(4)(d), C.R.S. (2012), requires the SOMB to "consult on, approve, and revise, as necessary, the risk assessment screening instrument," which is used to "assist the sentencing court" in determining the likelihood that an adult sex offender will recidivate.[7] In carrying out this duty, the SOMB "shall consider research on adult sex offender risk assessment" and consider the risk posed by an adult offender who suffers from a psychopathy or personality disorder that makes the offender more likely to engage in sexually violent predatory offenses. *Id.*

¶ 32 The SOMB is required by statute to base its work on research, empirical data, and analysis of evidence-based practices. § 16–11.7–103(4)(e), C.R.S. (2012). This statutory duty is consistent with the general assembly's declaration to create a program that establishes evidence-based standards for the evaluation, identification, treatment, management, and monitoring of sex offenders. § 16–11.7–101(2), C.R.S. (2012). In turn, the general assembly's incorporation of evidence-based standards into the recidivism prong of the SVP designation is consistent with its intent to limit the SVP designation to those offenders who actually "pose a high enough level of risk to the community" to warrant community notification. § 16–13–901.

### II.

¶ 33 I now turn to the trial court's use of the results of the risk assessment screening instrument. I agree with the majority that a trial court is not bound by an evaluator's assessment regarding an offender's risk of recidivism for purposes of the fourth criterion of the SVP designation. To rule otherwise would render the evaluator's determination essentially unreviewable, which is inconsistent with the trial court's duty under section 18–3–414.5(2) to make the ultimate determination whether an offender meets all four statutory criteria to be designated an SVP. That said, the statute constrains the court's discretion insofar as section 18–3–414.5(1)(a)(IV) requires the risk of recidivism prong of the SVP designation to be "based upon" the results of a recidivism risk assessment screening instrument developed by the DCJ and SOMB.

¶ 34 I agree with the majority that "based upon" means "to use particular ideas or facts to make a decision." Maj. op. ¶ 14. However, the plain meaning of the phrase "based upon" imposes a substantial and meaningful constraint. Thus, I cannot agree that "based upon" means that a trial court (or this court) can deviate from the screening instrument's assessment and instead rely on whatever factors that particular court deems "highly relevant" in determining risk of recidivism. *See id.* ¶ 20.

¶ 35 Had the general assembly intended for trial courts to base the risk of recidivism determination under section 18–3–414.5(1)(a)(IV) on other factors in addition to the risk assessment, it easily could have so provided. *See, e.g.,* § 17–22.5–404(4)(a), C.R.S. (2012) (requiring the state parole board to consider the "totality of circumstances" in deciding whether to release parolees, including, *inter alia,* "the actuarial risk of reoffense"). Instead, the plain lan-

---

**7.** I agree with the majority that although the SOMB and DCJ have created an instrument that purports to interpret the relationship criterion of the SVP designation in section 18–3–414.5(1)(a)(III), the statutory authority for the instrument under section 18–3–414.5 is limited to assisting the court in assessing the risk that the offender will commit additional predatory sexual offenses in the future. *See* maj. op. ¶ 9; § 18–3–414.5(1)(a)(IV). It is the province of the court, not the SOMB, to interpret the language of section 18–3–414.5, including the term "stranger" and the phrase "established or promoted a relationship primarily for the purpose of sexual victimization" in section 18–3–414.5(1)(a)(III).

guage of section 18–3–414.5(1)(a)(IV) requires the trial court to determine the offender's likelihood to recidivate by relying on the factors contained within the risk assessment screening instrument developed by the DCJ and SOMB.

¶ 36 As the majority notes, the risk assessment screening instrument is developed "using the most up-to-date sex offender risk assessment research," and evaluators are trained on how to properly score the instrument "to ensure less variation between offenders' scores." Maj. op. ¶ 16. By contrast, the court does not undergo any training on scoring the instrument, nor does it consult any sex offender risk assessment research. In short, the trial court is an expert in legal matters, not sexual assault recidivism assessments.

¶ 37 Indeed, the majority implies that trial courts are not trained or qualified to assess actuarial risk of recidivism according to the evidence-based screening instrument; thus, the majority asserts, courts should not rescore the instrument. Maj. op. ¶ 16. Yet, the majority fails to explain how a court becomes more, not less, qualified to assess an offender's risk of recidivism by rejecting the instrument altogether and instead deciding for itself which factors "tend to indicate that the offender is likely to recidivate." *Id.* ¶ 17.

¶ 38 Trial courts make difficult decisions every day. Not the least of these decisions is the determination whether an offender should be designated a sexually violent predator. Predicting the future risk of a sexual offender is particularly difficult. *See* R. Karl Hanson & Monique T. Bussière, *Predicting*

*Relapse: A Meta–Analysis of Sexual Offender Recidivism Studies,* 66 J. Consulting & Clinical Psychol. 348 (1998). Although the majority endeavors to predict Allen's future risk independently, *see* maj. op. ¶¶ 20–23, the general assembly has unambiguously required the court to determine an offender's risk of recidivism based not on judicial hunch, but instead on the risk assessment screening instrument, which incorporates factors that correlate statistically with recidivism.[8] Thus, if a trial or appellate court relies on factors that fall outside those identified in the instrument—even those that may appear to the court to be grounded in common sense—such factors may not actually correlate with recidivism.[9] Such an approach contravenes the general assembly's plain intent that such recidivism determinations be grounded in empirical research and evidence-based practices. It also greatly undermines the legislature's intent to limit the SVP designation only to that subset of high-risk offenders who warrant community notification. § 16–13–901. In my view, the majority's approach is not only destined to result in inconsistencies in SVP designations, but is likely to lead to greater numbers of offenders being designated sexually violent predators because trial courts naturally may be tempted to allow the horrific circumstances of a particular crime (appropriately considered for purposes of sentencing) to influence their determination of the separate, statutory SVP designation.

¶ 39 Certainly, a particular offender who does not meet the criteria in the risk assessment screening instrument may later recidi-

---

8. The risk assessment screening instrument is an evolving one; the SOMB periodically revises the instrument to accommodate the most up-to-date research. *See* § 16–11.7–103(4)(d). Contrary to the majority's assertion, "dynamic factors" refer to variables that tend to change over time, such as motivation, denial, or willingness to change. Kim English, Paul Retzlaff & Dennis Kleinsasser, *The Colorado Sex Offender Risk Scale,* 11 J. of Child Sexual Abuse 77, 78 (2002), available at http://dcj.state.co.us/ors/pdf/Published_Research_Articles/The_Colorado_Sex_Offender_Risk_Scale.pdf. Although it is true that the current version of the screening instrument does not contain "dynamic factors," it does contain factors pertaining to the actual crime. *See* maj. op. ¶ 10 n.2.

9. Scientific studies show that actuarial risk predicts offenders' future behavior far better than the professional judgment of any individual, whether psychologist, corrections officer, or trial court judge. *See generally* Don M. Gottfredson, Nat'l Inst. of Justice, *Effects of Judges' Sentencing Decisions on Criminal Careers* 11 (Nov. 1999), available at http://www.ncjrs.gov/pdffiles1/nij/178889.pdf; *see also* PEW Ctr. on the States, *Arming the Courts with Research, Public Safety Policy Brief* 3 (May 2009), available at http://www.colorado.gov/ccjjdir/Resources/Resources/Ref/PEW_ArmingTheCourtWithResearch.pdf ("When 'validated' ... [actuarial risk assessment tools] are much more accurate than human judgment in predicting the risk of an offender's recidivism.").

vate; but the purpose of the risk assessment screening instrument is not to predict *individual* behavior. Rather, as the SOMB explains in its handbook, "statistical risk tools predict an individual's membership in a subgroup that is correlated with future offending." *Handbook: Sexually Violent Predator Assessment Screening Instrument (SVPA-SI)*, 37 (August 2010), http://dcj.state.co.us/ors/pdf/docs/Risk%20Assessment/merged%20SVP%20handbook.pdf. However, even where a particular offender does not meet the SVP criteria, the community is hardly left unprotected. First, a trial court has significant discretion in sentencing and may properly weigh the circumstances of an offender's conduct when crafting a sentence. Thus, in my view, a trial court's concerns regarding a particular offender will be reflected appropriately in the sentence imposed. Accordingly, the fact that a particular offender does not meet the SVP criteria will have little practical impact on community safety where a lengthy sentence renders it unlikely the offender will be released into the community in any event. Moreover, even for those offenders who are released into the community, the Colorado Sex Offender Lifetime Supervision Act provides for intensive supervision. §§ 18–1.3–1001 to –1012, C.R.S. (2012). Section 18–1.3–1005(2), C.R.S. (2012), for example, authorizes a parole program that may include "severely restricted activities, daily contact between the sex offender or other person and the community parole officer, monitored curfew, home visitation, employment visitation and monitoring, drug and alcohol screening, treatment referrals and monitoring, including physiological monitoring, and payment of restitution." Finally, section 16–22–108, C.R.S. (2012), requires offenders to register with local law enforcement. In short, I do not find it necessary or appropriate to give trial courts virtually unfettered discretion to determine an offender's risk of recidivism under section 18–3–414.5(1)(a)(IV) contrary to legislative intent.

¶ 40 Nonetheless, I concur in the judgment here because I believe the trial court in Allen's case did not err in designating Allen as an SVP. It is squarely within the traditional province of the court to assess the reliability of the evaluator in his or her scoring of the instrument, to question whether the evaluator made the recommendation based on sufficient evidence, or to determine whether the evaluator erred in applying the instrument's criteria to the facts at hand. In this case, the trial court ultimately based its recidivism determination on the factors contained in the risk assessment screening instrument. To the extent the trial court rejected the results of the instrument, it questioned the evaluator and catalogued, on the record, the ways in which it found that the evaluator had erred in filling out the instrument. The trial court made specific findings that contradicted the evaluator's assessment. Therefore, even though the trial court disagreed with the SOMB evaluator's assessment, the court still made its ultimate determination based on the evidence-based standards provided to it by the DCJ and SOMB. Accordingly, I concur in the judgment.

Justice COATS, dissenting.

¶ 41 Although I would reach the same result in some of the five "Sexually Violent Predator" cases decided by the court today, I do not join the majority opinion in any of the five, largely because of our fundamentally different understandings of both the nature and constitutional limits of the statutory scheme. As there would be little point at this stage in developing my interpretation in detail, I content myself with describing my perspective, in the hope that even this may inspire caution with respect to the implementation of today's holdings and any future modification of the statutory scheme.

¶ 42 Initially, it must be emphasized that the constitutionality of the scheme as a whole rests entirely on the proposition that the sexually-violent-predator designation, and all it entails, does not constitute a criminal penalty. Were it otherwise, there can be no question that the scheme would fail, for a host of constitutional, process-related reasons. However, none of today's defendants challenge this proposition, notwithstanding the significant differences between our statutory scheme and the registration scheme upheld by the United States Supreme Court in

*Smith v. Doe*, 538 U.S. 84, 123 S.Ct. 1140, 155 L.Ed.2d 164 (2003), including, for example, our legislature's choice to locate the scheme entirely in the Criminal and Criminal Procedure Codes; to assign to a criminal sentencing court the task of determining sexually-violent-predatory status and include that determination on the defendant's mittimus alongside his sentence; and to impose criminal sanctions for failure to comply with the burdens accompanying this status, which sanctions vary in severity with the classification of the defendant's underlying conviction. In the absence of such a challenge and the analysis it would necessarily engender, I believe the majority, as the court of appeals before it, fails to adequately account for the fact that imposing the burdens of sexually-violent-predator status can be constitutional *only* to the extent the court is performing some function other than criminal sentencing. While the absence of a constitutional challenge may justify a presumption, for purposes of these cases alone, that the designation is not a criminal penalty, it most certainly does not justify actually endorsing the intermediate appellate court's resolution of that question or ignoring the constitutional limitations inherent in our construction of the statutory scheme.

¶ 43 Against this backdrop, nothing in section 18–3–414.5, C.R.S. (2012), allocates more than a factfinding role to the criminal sentencing court. Except in the most extraordinary circumstances, the defendant's age and the crime of which he stands convicted will be straightforward matters of record. Although the precise meaning of the third factor in the definition may require some statutory interpretation, as others of the cases before the court today demonstrate, whether the victim was a stranger or someone with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization is nevertheless clearly a matter of historical fact. Finally, the fourth factor, although ostensibly calling for the determination of a likelihood or prediction of future conduct, in the nature of a finding we have in other contexts characterized as a mixed question of fact and law, *see, e.g.,* *People v. Matheny*, 46 P.3d 453, 459–61 (Colo.2002) (discussing findings of custody,

probable cause, and reasonable suspicion), actually assigns to the court no more than the task of factoring-in the results of a predetermined screening instrument.

¶ 44 In this regard, I agree largely with Justice Márquez that by requiring any prediction of future conduct to be based upon the results of the screening instrument, the legislature has assigned the responsibility, and authority, for determining predictability to a different entity altogether. While I may be less enamored than the majority or Justice Márquez with the so-called evidenced-based-practices approach, which seems to connote a non-analytic but nevertheless anecdotal, rather than formally empirical, approach; and while I would be more circumspect about using the terms "expert" and "expertise" where neither the validity of the instrument itself nor the credentials of the evaluator have been tested according to the rules of evidence, nevertheless, in the absence of a violation of due process, I consider those decisions to rest with the legislature. Rather than granting the court the authority to make a prediction about the likelihood of recidivism, I believe the clear language of the statute simply mandates that the court factor into its findings the results of the screening instrument.

¶ 45 While I therefore would not consider the court authorized to deviate from the methodology of the screening instrument, as does the majority, I believe (much like Justice Márquez) the statute permits the fact finder to assess the evidence relied on by the evaluator to produce a particular score. By indicating that the determination must be "based upon the results" of the screening instrument, the statute might actually be understood to require the court to merely accept the score determined by the designated evaluator. *See* § 18–3–414.5(1)(a)(IV). Because, however, the court is clearly made the finder of fact, I believe the better reading of the statute leaves to the court, just as with the other three sexually-violent-predator factors, the evaluations of weight and credibility, as would be the case even with regard to actual expert testimony. As the trier of fact, the court's ultimate finding remains, of course, subject to review for clear error.

¶ 46 Depending on the specific configuration of the screening instrument at any point in time and the particular aspect of the evaluator's scoring with which the court disagrees, rejecting a score indicating a likelihood of recidivism will, for obvious reasons, be more likely to find record support than rejecting a score indicating no such likelihood. To the extent, however, the screening instrument includes verifiable matters of record or matters involving the circumstances of the defendant's underlying crime, rejection of an evaluator's scoring may well find support in the trial record or records otherwise cognizable by judicial notice. In this regard, however, while I agree with the majority that the interpretation of the third factor in the definition is a matter for the courts, see maj. op. ¶¶ 12–14, I find nothing in the statutory scheme precluding the Board from including its own methodology for evaluating "the circumstances described in subparagraph (III)" as an element of its instrument for predicting future predatory behavior, see § 18–3–414.5(1)(a)(IV).

¶ 47 In this case, I believe the record demonstrates that the sentencing court merely disparaged the instrument itself and rescored it to produce positive rather than negative results of a likelihood of recidivism. Like Justice Márquez, I would reject the majority's reliance on factors not considered predictive by the body assigned the task of determining predictability generally, but unlike Justice Márquez, I would find the trial court's rescoring in this case to be without evidentiary support in the record. Because I believe the court's finding that the defendant is a sexually violent predator to therefore be clearly erroneous, I respectfully dissent from the majority's judgment in this case.

¶ 48 As the trier of fact, the criminal sentencing court's findings with regard to the other factors of the sexually-violent-predator definition should also be reviewed only for clear error, but the interpretation of the statutory terms themselves is not a matter as to which the court is entitled to deference. While the meanings of "stranger" and "established or promoted" are more the subject of other sexually-violent-predator cases decided today, in conjunction with giving my perspective on the scheme as a whole, I note my disagreement with the interpretations of both the majority and concurring opinions. I believe these terms appearing in subparagraph (III) must be construed of a piece, giving consideration to the expressed purposes and dangers of registration and notification.

¶ 49 As a single part of the statutory four-part definition of "sexually violent predator," subparagraph (III) is clearly designed to narrow the classification by excluding those sex offenders not posing a high enough risk to the community at large to justify community notification. See § 16–13–901, C.R.S. (2012) (Community Notification Concerning Sexually Violent Predators—Legislative declaration). To that end, subparagraph (III) excludes those offenders whose designated sexual offenses arose out of, or were facilitated by, a relationship with the victim other than one promoted primarily for the purpose of sexual victimization. Rather than mechanically segregating the key terms and choosing among noncontextual dictionary definitions, I therefore believe the phrase "established or promoted a relationship primarily for the purpose of sexual victimization" should be understood to bring within the classification those sexual assaults resulting from attempts to develop a relationship primarily for the purpose of sexual victimization, however successful those attempts or however established those relationships may be; and the statute's use of the term "stranger" should be understood to comprehend all those sexual assaults not resulting from or facilitated by a relationship between the offender and victim. See § 18–3–414.5(1)(a)(III).

¶ 50 Finally, I observe that the offenses for which one may be designated a sexually violent predator include, as exemplified by one of the five sexually-violent-predator cases decided today, see People v. Gallegos, 2013 CO 45, 307 P.3d 1096, 2013 WL 3322612 (involving sexually violent predator designation for conviction of class 5 felony attempted sexual assault on an child), inchoate offenses amounting to no more than misdemeanors or class 5 or 6 felonies, crimes for which sentencing pursuant to the "Colorado Sex Of-

fender Lifetime Supervision Act of 1998" is not even authorized, *compare* § 18–1.3–1003(5)(b), with § 18–3–414.5(1)(a)(II). Were it not so, the registration and notification requirements of the scheme could presumably be implemented with greater flexibility as conditions of probation or parole. As presently configured, however, I believe the statutory scheme's constitutional validity to be contingent upon its maintaining a non-criminal nature, a matter I consider to have not yet been meaningfully decided by this court.

¶ 51 For the foregoing reasons, I respectfully dissent.