24CA0530 Peo v West 12-24-2025

COLORADO COURT OF APPEALS

---

Court of Appeals No. 24CA0530
Douglas County District Court No. 22CR1202
Honorable Natalie Girard Stricklin, Judge
Honorable Patricia D. Herron, Judge

---

The People of the State of Colorado,

Plaintiff-Appellee,

v.

Devon Brandon West,

Defendant-Appellant.

---

JUDGMENT AFFIRMED

Division V
Opinion by JUDGE YUN
Freyre and Pawar, JJ., concur

**NOT PUBLISHED PURSUANT TO C.A.R. 35(e)**
Announced December 24, 2025

---

Philip J. Weiser, Attorney General, Cata A. Cuneo, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Megan A. Ring, Colorado State Public Defender, Emma Berry, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

¶ 1     Devon Brandon West appeals his designation by the district court as a sexually violent predator (SVP).  He argues that the court violated his statutory and due process rights by (1) basing its SVP designation on unreliable results from the Sexually Violent Predator Assessment Screening Instrument (SVPASI) and (2) failing to make specific findings to support the SVP designation.  We disagree and therefore affirm his designation.

## I.     Background

¶ 2     Between August 2020 and February 2022, West engaged in a sexual relationship with a fifteen-year-old coworker who was twenty years his junior.  Following an anonymous report, West was charged with one count of sexual exploitation of a child and one count of sexual assault.  He pleaded guilty to both charges.

¶ 3     Before West's sentencing hearing, a probation officer completed Colorado's mandatory recidivism assessment: the SVPASI.  The officer used the 2020 SVPASI, which employs the 2018 Sex Offender Risk Scale (SORS) formula to quantify an offender's recidivism risk.  Under this formula, West received a SORS score of 22.19:

22.19 = (6 Adult Cases × 2.1) + (3 Juvenile Cases × 3.1)

$$+ \text{ (4 Cases with a Revocation} \times 2.2)$$

$$- \text{ (37 Earliest Sex Offense Filing Age} \times .23).$$

This calculation included West's six adult cases, three juvenile cases, and four cases with a revocation of probation or community corrections. His age was entered as thirty-seven.

¶ 4     According to the SVPASI, West was considered likely to reoffend because his SORS score of 22.19 placed him in "a risk category with a 50-60% likelihood of a new sex or violent crime court filing within 8 years." The probation officer forwarded the SVPASI to a Sex Offender Management Board (SOMB) evaluator, who indicated that she "agree[d] with the instrument findings for [the SORS score]."

¶ 5     At sentencing, the district court asked whether either side had "[a]ny changes [or] modifications" to the presentence investigation report detailing West's criminal history. Defense counsel did not respond. Later, the district court granted the prosecution's request to designate West as an SVP, finding that (1) West's victim was significantly younger; (2) West's conduct would amount to a felony under current law; and (3) West groomed the victim to maintain an ongoing abusive relationship with her. Defense counsel filed a

2

motion for reconsideration and requested a hearing on his designation.

¶ 6     At the SVP hearing, defense counsel argued that West barely qualified for designation under the SVPASI because he scored a 22.19 — .19 above the 22-point threshold.  She argued that imposing lifetime registry "because of a .190 on an assessment" was "not in the interest of justice."  To illustrate how minor changes to the SORS formula could place West below the 22-point threshold, she presented two hypothetical calculations — one that excluded West's 2002 juvenile case and one that entered West's age as thirty-eight instead of thirty-seven.  She argued that the number of West's juvenile cases should be reduced to two, remarking he would have "scored a 19.090 without" the "Class III misdemeanor theft in 2002 . . . when Mr. West was a juvenile."  As to West's age, she observed that he was "two months shy of his 38th birthday" and remarked, "If he had been 38 instead of 37, he would have scored under 22, at 21.960."

¶ 7     The prosecutor supported West's designation, contending that his SORS score of 22.19 understated his true risk.  She argued that, based on her review of the Offense-Specific Evaluation (OSE)

containing West's criminal history, the evaluator undercounted two variables in the SORS formula: (1) West's juvenile cases, by excluding a case in which he was charged but not convicted; and (2) West's cases with a revocation, by omitting the revocation of a juvenile probation sentence.

¶ 8    The chart below summarizes the variables advanced by the parties as well as the resulting SORS scores:

| | Evaluator's SORS Score (from SVPASI) | Defense Counsel's Proposed SORS Score (with modified age) | Defense Counsel's Proposed SORS Score (with juvenile cases modified) | Prosecutor's Proposed SORS Score (with juvenile and revocation cases corrected) |
|---|---|---|---|---|
| Adult Cases (filed) | 6 | 6 | 6 | 6 |
| Juvenile Cases (filed) | 3 | 3 | 2* | 4* |
| Cases with a Revocation (from probation or community corrections) | 4 | 4 | 4 | 5* |
| Earliest Sex Offense Filing Age | 37 | 38* | 37 | 37 |
| SORS Score | 22.19 | 21.96* | 19.09* | 27.49* |
| *Indicates a hypothetical value advanced by one of the parties. | | | | |

4

¶ 9    Once both parties presented their arguments, the district court clarified which parts of the record it considered:

- "the Presentence Investigation Report, which includes both the [OSE] as well as the [SVPASI]";

- "collateral sources of information, to include . . . the Affidavit";

- "the review of the Index Offense provided in the [OSE], which also includes a section designated client version of the Index Offense";

- "the determination that Mr. West is in a low-to-moderate range" according to some risk assessments; and

- *Allen v. People*, 2013 CO 44, which the district court interpreted as holding, "if I make specific findings regarding the risk of recidivism that [sic] I can deviate from [the SVPASI's results]."

¶ 10   After this clarification, the court concluded:

> I have considered the determination that
> Mr. West is in a low-to-moderate range on the
> [OSE] Risk Assessment; however based upon
> the record as a whole, I find that I am unable
> to make specific findings based upon that
> alone and in the light of the circumstances
> which led to the conviction to deviate from the

5

SVP scoring instrument. So based upon that record, I will find that Mr. West is appropriately designated a sexually violent predator.

Consistent with the SVPASI's results, the district court upheld West's designation as an SVP.

¶ 11 West now appeals his SVP designation.

## II. Standard of Review

¶ 12 We interpret the SVP statute de novo. *Allen,* ¶ 4. We review the district court's "SVP designation — a mixed question of law and fact — by deferring to the [district] court's factual findings when they are supported by the record, and reviewing de novo the [district] court's legal conclusions regarding whether an offender should be designated as an SVP." *Id.*

## III. SVPASI and Applicable Law

¶ 13 To qualify for SVP designation by the district court, an offender must meet the following statutory criteria:

> (I) [the offender] is eighteen years of age or older as of the date the offense is committed . . . ;
>
> (II) [the offender] has been convicted on or after July 1, 1999, of one [of the enumerated sex offenses];

6

> (III)  [the offender's] victim was a stranger to the offender or a person with whom the offender established or promoted a relationship primarily for the purpose of sexual victimization; and
>
> (IV)  [the offender], based upon the results of [the SVPASI] developed by the division of criminal justice in consultation with and approved by the [SOMB] established pursuant to [statute] is likely to subsequently commit one [of the enumerated sex offenses] under the circumstances described in subparagraph (III) . . . .

§ 18-3-414.5(1)(a), C.R.S. 2025.

¶ 14    Only the fourth criterion — the recidivism criterion — is at issue in this case.  An offender meets the recidivism criterion when, "*based upon* the results of" the SVPASI, he is deemed "likely to subsequently commit" a sexually violent crime in the manner described in the relationship criterion.  *Allen*, ¶ 14 (quoting § 18-3-414.5(1)(a)(IV)).

¶ 15    Based upon the 2020 SVPASI, one way a defendant can meet the recidivism criterion is by receiving a SORS score of 22 or higher. The SORS score is calculated using the following 2018 formula:

SORS Score = (# Adult Cases × 2.1) + (# Juvenile Cases × 3.1)

+ (# Cases with a Revocation × 2.2)

– (Earliest Sex Offense Filing Age × .23).

Regarding the filing age, the SVPASI instructs the evaluator to input the "age at filing date" and "[r]ound age to the nearest full year." A SORS score above 22 — achieved by fewer than 5% of those assessed — indicates a 50-60% probability of a new sex or violent crime within eight years.

¶ 16    The SVPASI functions as "the foundation" and "primary aid" for a district court's SVP designation. *Allen*, ¶¶ 14-15. Thus, a district court is encouraged to "substantially defer to the scored [SVPASI's results]," including when "mak[ing] a decision regarding an offender's likelihood to [recidivate]." *Id.* at ¶¶ 14, 16. Moreover, the district "court should not re-score the [SVPASI]" because the "SOMB develops the [SVPASI] using the most up-to-date sex offender risk assessment research and trains evaluators on how to properly score the [SVPASI] to ensure less variation between offenders' scores." *Id.* at ¶ 16.

¶ 17    Though the SVPASI's results are foundational, under limited circumstances, the district court must supplement the SVPASI's results with its own specific findings. *Id.* at ¶ 17. For example, a district court can deviate from the SVPASI's recommendation, but it

8

"may only do so after making specific findings justifying the deviation." *Id.* at ¶ 12.[1] Additionally, divisions of this court have held that if an outcome determinative fact in the SVPASI is factually disputed, then "due process and [the SVP statute] require the trial court to make further factual findings before adopting the assessment." *People v. Lopez*, 2020 COA 41, ¶ 8; *People v. Tuffo*, 209 P.3d 1226, 1231-32 (Colo. App. 2009).

¶ 18    In *Lopez*, the division vacated the SVP order because the district court relied exclusively on the SVPASI's results, even though the SVPASI contained two outcome determinative facts that were factually disputed. *Lopez*, ¶¶ 16, 21. The first fact — whether the offender had lived at three different residences — was disputed as inaccurate by defense counsel at sentencing. *Id.* at ¶ 18. It was outcome determinative because, but for this fact, the offender "would not have been eligible for an SVP designation." *Id.* at ¶ 21.

---

[1] West cites *Allen v. People*, 2013 CO 44, to support his contention that the district court must make specific factual findings, but the court's reasoning in *Allen* turned on different facts. In *Allen*, the SVPASI indicated the defendant was not an SVP, but the district court still designated him as an SVP. *Id.* at ¶ 2. The supreme court upheld the designation because the district court "[made] specific findings on the record to demonstrate the necessity of the offender's SVP designation." *Id.* at ¶ 24.

9

The second fact — whether the offender "promoted a relationship" — was factually disputed due to contradictory answers within the SVPASI. *Id.* at ¶ 15. It too was outcome determinative because the SVPASI's recommended designation depended on this fact. *Id.* at ¶ 12.

¶ 19    Likewise, in *Tuffo*, 209 P.3d at 1232, the division held that the district court was required to make specific findings because the SVPASI contained an outcome determinative fact that was disputed as inaccurate at the hearing — namely, whether the offender had completed the first grade.

¶ 20    In sum, the district court should generally defer to the SVPASI's results. *Allen*, ¶ 24. However, if a finding within the SVPASI is (1) factually disputed and (2) outcome determinative, then the court must supplement the SVPASI with its own specific findings before designating the offender an SVP. *Lopez*, ¶¶ 16, 21; *Tuffo*, 209 P.3d at 1232.

IV.    Obligation to Make Specific Findings

¶ 21    West contends that the district court was required to make its own findings to support his SVP designation because the SVPASI's findings were "unreliable." Specifically, he argues the SVPASI's

10

findings were unreliable because (1) his SVPASI "contained at least one error and two unexplained, unsourced, and disputed variables"; and (2) the SVPASI, more generally, "doesn't predict a defendant's likelihood to recidivate as specified in the SVP statute."

## A. Reliability of West's SVPASI

¶ 22 We first address West's argument that his SVPASI's findings were unreliable due to three variables in his SORS formula: (1) earliest sex offense filing age; (2) juvenile cases; and (3) cases with a revocation.

¶ 23 On appeal, West argues that his filing age was incorrectly entered as thirty-seven in the SORS formula because the evaluator did not round up "to the nearest full year," per the SVPASI instructions. However, we disagree that the district court was required to make its own findings regarding West's age for three reasons.

¶ 24 First, this case is distinguishable from *Lopez* and *Tuffo*. Although West's age is an outcome determinative fact, it was not factually disputed in the district court. Rather, at the SVP hearing, defense counsel advanced a policy argument, asserting that even a

small change to West's age in the SORS formula could unfairly influence the SVPASI's recommended designation.

¶ 25     Second, the SVPASI does not instruct evaluators to round *up* the offender's age.  It says to input the "age at filing date" and to "[r]ound age to the nearest full year."  A reasonable reading of this instruction is to list the individual's age as the nearest completed "full" year, thereby avoiding unwieldy decimal points or fractions.

¶ 26     Third, to the extent that the instruction is unclear, the district court properly deferred to the expertise of a trained evaluator.  An instruction may be capable of two interpretations, but the evaluator is trained "on how to properly score the [SVPASI] to ensure less variation between offenders' scores."  *Allen*, ¶ 16.

¶ 27     West next argues that his juvenile cases and his cases with a revocation included in the SORS formula were "unexplained, unsourced, and disputed."  As we understand West's argument, he contends that these two variables are "unreliable" because the parties argued, and the psychosexual evaluation listed, different values than those the evaluator ultimately entered into the SORS formula.  We disagree that the district court was required to make

its own findings regarding the number of juvenile cases or cases with a revocation for several reasons.

¶ 28    First, the district court was not required to supplement the SVPASI's finding of three juvenile cases simply because West now argues on appeal that the psychosexual evaluation lists only two. Unlike in *Lopez* and *Tuffo*, whether West had two or three juvenile cases was not "factually disputed." At sentencing, when the district court asked if either party had "[a]ny changes" to West's criminal history, defense counsel was silent. At the SVP hearing, she objected to the injustice of including older juvenile cases, not to the accuracy of those cases.

¶ 29    Additionally, unlike in *Lopez*, the SVPASI's results here are internally consistent. *See Lopez*, ¶ 16. Although West points out that the psychosexual evaluation contradicts the SVPASI, the SVPASI itself — the document to which courts are directed to "substantially defer" — remains consistent. *Allen*, ¶ 16. Moreover, West refers to the psychosexual evaluation only to highlight the different values. He never argues that the evaluation contains the correct number of juvenile cases.

¶ 30    Second, the district court was not required to supplement the SVPASI's finding of three juvenile cases because the prosecution argued that four was the correct entry. Whether West had three or four juvenile cases was "factually disputed" because the prosecution challenged three as factually inaccurate. However, whether West had three or four juvenile cases is not an outcome determinative fact: He was already eligible for SVP designation, even if the evaluator undercounted.

¶ 31    Third, the district court similarly was not required to supplement the SVPASI's finding of four cases with a revocation because the prosecution argued that five was the correct number. Again, this finding was "factually disputed" by the prosecution, but it was not outcome determinative.

¶ 32    In conclusion, this analysis reinforces the rationale behind our supreme court's directive that district courts should "substantially defer" to the SVPASI's results. *Allen,* ¶ 16. Evaluators receive specialized training on how to "properly score" the SVPASI — including which cases to include or exclude and how to determine the filing age. *Id.* Unless an outcome determinative input is

objected to as fabricated or factually inaccurate, the district court should refrain from "re-scor[ing] the instrument." *Id.*

¶ 33    On these facts, we cannot say the SVPASI's findings were unreliable.

### B.    Reliability of the SVPASI

¶ 34    West contends that all SVPASI results are "inherently unreliable" because the SVPASI measures a broader recidivism risk than the SVP statute specifies.  He further contends that prior divisions' decisions upholding an older SORS formula are inapposite because he was evaluated under the 2020 SVPASI using the 2018 SORS formula.  We address each contention in turn.

¶ 35    As for the SVP statute's specifications, the statute's recidivism criterion is satisfied if, "based upon the results of [the SVPASI]," an offender is found "likely to subsequently commit [one of the enumerated sex offenses] under the circumstances described." § 18-3-414.5(1)(a)(IV).  The 2020 SVPASI, which employs the 2018 SORS formula, classifies offenders with a SORS score of 22 or higher as having "a 50-60% likelihood of a new sex *or violent* crime court filing within 8 years."  (Emphasis added.)  West argues that this metric —by including violent crimes — encompasses a broader

15

recidivism group than those "likely to subsequently commit [one of the enumerated *sex* offenses] under the circumstances described."

¶ 36 However, the statute accounts for this apparent discrepancy by incorporating both the SVPASI and the SOMB's SORS scoring into its definition of the recidivism group. The phrase "based upon the results" indicates that the legislature intended for the SOMB's SORS scoring to affect the statute's application. § 18-3-414.5(1)(a)(IV). While the statute identifies the recidivism risk group that the SOMB should target, it delegates to the SOMB the responsibility of creating an assessment that predicts the likelihood that an offender falls within this risk group. Inevitably, the risk group identified through the SOMB's probability assessment may not perfectly align with the statute's target risk group. But the statute contemplates this result.

¶ 37 Turning to prior divisions' decisions, the analyses in *People v. Brosh*, 251 P.3d 456 (Colo. App. 2010) and *People v. Mendoza*, 313 P.3d 637 (Colo. App. 2011) remain persuasive. In *Brosh*, the court held the research-driven SORS scoring satisfied the SVP statute's objectives in part because the SOMB noted "the risk of arrest for violent crimes as a 'reasonable proxy' in measuring

16

recidivism of sex offenders."  251 P.3d at 460 (citation omitted).
Similarly, in *Mendoza*, the court concluded that "based on the
[SOMB's] research, the SVPASI was not invalid for lacking sufficient
bases upon which to predict the likelihood of committing a future
SVP offense."  313 P.3d at 642.

¶ 38    West correctly asserts that the SORS scoring mechanism has
changed significantly since *Brosh* and *Mendoza* were decided, but
he offers no evidence that it has become less reliable than older
versions.  On the contrary, West admits that the current version
resulted from the SOMB addressing criticisms of its older SORS
scoring mechanisms.  This suggests the 2018 version serves as a
better proxy for recidivism than the older version upheld in *Brosh*
and *Mendoza*.  Accordingly, we cannot say the SVPASI's results, in
general, are "inherently unreliable," as West contends.

¶ 39    Because the SVPASI generally, and West's SVPASI specifically,
were reliable, the court was not required to make its own findings to
support West's SVP designation.

VI.    Disposition

¶ 40    The judgment is affirmed.

JUDGE FREYRE and JUDGE PAWAR concur.

17